RENO SPARKS CONVENTION VISITORS AUTHORITY, APPELLANT, *v.* KENNETH JACKSON, RESPONDENT.

No. 26399

January 31, 1996                                910 P.2d 267

*DeGraff, Salerno, McCarty & Ryan,* Carson City, for Appellant.

*Law Offices of John L. Carrico* and *Carter R. King,* Reno, for Respondent.

*Lenard Ormsby,* General Counsel, and *Matthew Feiertag,* Associate General Counsel, Carson City, for Amicus Curiae State Industrial Insurance System.

# OPINION

*Per Curiam:*

Respondent Kenneth Jackson worked for appellant Reno Sparks Convention and Visitors Authority (RSCVA) as a golf course groundskeeper. In May of 1992, while riding a rotary mower, Jackson struck a bump or dip on the course. He experienced extreme pain and, as a result, was admitted to the hospital. Jackson's doctor determined that he was suffering from a right ureteropelvic junction (UPJ) obstruction.

Jackson immediately filed an insurance claim with RSCVA's third-party insurer, W.R. Gibbens, Inc. (Gibbens). Gibbens denied the claim, notifying Jackson of his time limit for appealing the denial. Jackson failed to appeal the denial within the time specified. However, several months later, Jackson submitted a letter from his treating physician to Gibbens, intending that the letter serve as a new claim. Gibbens again denied the claim, informing Jackson that he no longer had appeal rights. In a proceeding before the hearing officer, the denial was affirmed. Jackson appealed, and the appeals officer reversed the denial. The district court affirmed the appeals officer's decision. We now reverse the order of the district court based on our conclusion that neither the hearing officer nor the appeals officer had jurisdiction to hear this matter.

## FACTS

RSCVA hired Jackson to maintain the grounds at Wildcreek Golf Course. The afternoon of May 4, 1992, while mowing the grounds with a rotary mower, Jackson hit a dip or bump. He had been mowing the fairways since approximately 6:30 a.m. Jackson claimed that after hitting the bump, he experienced immediate right side back pain, nausea, and vomiting. Jackson left the golf course and went to the emergency room of Washoe Medical Center where he was observed in the emergency room for several hours and given pain medication.

Examinations revealed that Jackson was probably suffering from a right UPJ obstruction, i.e., a blockage in the tube that drains urine from the kidney to the bladder. On May 5, 1992, he was admitted to Washoe Medical Center for pain control and further evaluation of the possible blockage. Jackson was released the following day.

In a medical history given to doctors during his first visit to Washoe Medical Center, Jackson indicated that he had been experiencing intermittent pain over the last several years on the

right side of his body. He had quit drinking alcohol approximately three years prior to his injury at the golf course, because as little as one beer would cause him pain and nausea. According to his treating physician, Dr. Garey-Sage, alcohol often contributes to a UPJ obstruction because it is a diuretic, causing an increase in fluid excretion over the ability of the ureter to drain the kidney. The distension in the system results in pain.

Dr. Garey-Sage testified that, based on medical examinations and the history Jackson gave at the emergency room, Jackson's UPJ obstruction was congenital and had been present for at least a month and possibly years prior to the incident. Dr. Garey-Sage also testified that the pain Jackson had suffered over the years both with and without alcohol consumption could be associated with a chronically dilated system. Following his release from the hospital, Jackson underwent several surgeries, including a nephrectomy, to remedy his condition.

Upon his admission to the hospital on May 5, 1992, Jackson immediately filed an industrial injury claim form with RSCVA. Gibbens, the worker's compensation claims administrator for RSCVA, denied Jackson's claim. In a letter to Jackson dated May 8, 1992, Gibbens wrote that, after a careful investigation, "it is our decision to deny your claim. This denial is based upon the fact that you have not had an injury by accident as defined under (NRS 616.020) and (NRS 616.110) . . . ." The letter also informed Jackson that if he disagreed with the denial, he had "the right to request a hearing by completing and filing with the Hearings Division of the Department of Administration, the enclosed Request for Hearing form within sixty (60) days" from the date of the letter.[1]

On September 17, 1992, Jackson submitted a letter from Dr. Garey-Sage to Gibbens. In the letter, Dr. Garey-Sage explained that he had seen Jackson in May of 1992 for right renal colic. Dr. Garey-Sage wrote:

> Evaluation revealed that he had a ureteropelvic junction obstruction and he subsequently underwent surgery on this. This is a pre-existing condition however I think the job he had that involved alot [sic] of heavy physical activity and riding the carts around bumpy roads, would certainly make the pain associated with this condition worse.

On September 25, 1992, Gibbens wrote to Jackson to acknowledge receipt of this letter and noted that this claim had previously

---

[1]In 1993, the Legislature amended NRS 616.5412(2) to allow a request for a hearing to be filed within seventy days after an insurer mails its written determination. 1993 Nev. Stat., ch. 265, § 175 at 736.

been denied on May 8, 1992. The September letter also stated that in the May letter denying the claim, "[Jackson was] advised that if [he] disagreed with that determination, [he] had sixty days within which to appeal same." This letter also advised Jackson that the sixty days had passed and thus, due to time lapse, there could be no appeal. Jackson requested and was granted an appearance before the hearing officer. The hearing officer upheld Gibbens' decision.

Jackson appealed. In front of the appeals officer, Jackson testified that he had received, at his correct address, the May 8, 1992 letter denying his claim. The appeals officer reversed the hearing officer's decision, concluding that Jackson's job precipitated or accelerated his condition, which required his admission to the hospital on May 4, 1992. Additionally, the appeals officer found that Jackson's injuries had not been resolved by the time he was discharged from emergency treatment on May 5, 1992. The appeals officer stated: "He was taken off work, medicated, and continued in pain until May 13, 1992." Accordingly, the appeals officer ruled that Jackson's claim should be accepted as compensable by Gibbens.

RSCVA filed a petition for judicial review of the appeals officer's decision. RSCVA argued that the hearing officer and the appeals officer were both without subject matter jurisdiction to hear the case due to Jackson's failure to timely appeal the May 8, 1992 determination letter. The district court found that Jackson's treating physician did not inform Jackson that his condition was actually work related until September of 1992. At that time, the doctor also informed Gibbens that he believed the claim was caused by Jackson's employment. The district court concluded that both the hearing officer and the appeals officer correctly construed the letter of September 25, 1992, as the denial of a new claim. The district court stated: "This construction is consistent with the statutory duties imposed upon the physician and the Self-Insured Employer, (616.5412, NAC 616.5535)."

The district court also concluded that substantial evidence was presented for the appeals officer to make a determination that Jackson's condition was work related. The district court agreed with the appeals officer's assessment that Jackson had not been returned to his pre-injury condition following the emergency treatment. Accordingly, the district court determined that Jackson's injury should be accepted as "fully compensable" by RSCVA and Gibbens.

## DISCUSSION

In this case, neither the hearing officer nor the appeals officer

had subject matter jurisdiction to hear Jackson's case because he failed to timely appeal Gibbens' initial denial of his claim. Pursuant to NRS 616.5412, a hearing officer has jurisdiction over an issue only if a claimant files a timely request for a hearing. NRS 616.5412, in relevant part, states:

> 1. Any person who is subject to the jurisdiction of the hearing officers pursuant to this chapter or chapter 617 of NRS may request a hearing before a hearing officer of any matter within the hearing officer's authority. The insurer shall provide, without cost, the forms necessary to request a hearing to any person who requests them.
> 2. Except as otherwise provided in NRS 616.5395, a person who is aggrieved by:
> (a) A written determination of an insurer; or
> . (b) The failure of an insurer to respond within 30 days to a written request mailed to the insurer by *the person who is aggrieved,*
> *may appeal from the determination or failure to respond by filing a request for a hearing before a hearing officer. Such a request must be filed within 70 days after the date on which the notice of the insurer's determination was mailed by the insurer or the unanswered written request was mailed to the insurer, as applicable.*

(Emphasis added.) NRS 616.5412(3) only excuses a failure to request a hearing within this time frame if the claimant proves by a preponderance of the evidence that he or she never received notice of the determination and the forms necessary to request a hearing. Jackson admitted before the appeals officer that he had received, at his correct address, the May 8, 1992 letter denying his claim.

The Legislature has established strict time guidelines for appeals rights, and no statutory or regulatory authority exists allowing Jackson to request Gibbens to reconsider a claim after its denial and the extinguishment of original appeals rights. We are concerned that, under the district court's ruling, claimants' files which had originally been denied as compensable injuries would never be finalized. Failure to follow NRS 616.5412 would throw the claims process into chaos by subjecting work-related injury determinations to continued scrutiny following the statutorily established time for appeals. This court has, in a statute similarly mandating the time allowed to appeal from the decision of a hearing officer, construed such a time limit to be jurisdictional and mandatory. SIIS v. Partlow-Hursh, 101 Nev. 122, 696 P.2d 462 (1985). In *Partlow-Hursh,* this court noted that "NRS 616.5422(1) is silent as to whether or not the time limit can be

excused. Where the statute is silent, the time period for perfecting an appeal is generally considered to be mandatory, not procedural." *Id.* at 124-25, 696 P.2d at 463-64. Based on this language, we conclude that Jackson failed properly to request a hearing within the specified time frame and therefore lost his appeal rights.

Jackson also claims that the letter he submitted to Gibbens in September of 1992 constituted a new claim. Additionally, he claims that Gibbens' letter of September 25, 1992, was a letter of determination with appeals rights attached.

Upon Jackson's initial admission to the hospital, he immediately filed an industrial injury claim, meaning that Jackson felt his injury was job related. Dr. Garey-Sage's letter of determination in September, therefore, was not Jackson's first notice that the injury was work related. Additionally, Jackson was not wholly unfamiliar with the process of filing industrial injury claims. The record indicates that Jackson had filed several other industrial claims prior to the instant claim. Finally, from the time Jackson was first admitted to the hospital on May 4, 1992, through the time that the September letter was submitted to Gibbens, Dr. Garey-Sage had the same assessment of Jackson's injury, that he was suffering from a congenital UPJ constriction. The September letter to Gibbens did not provide Gibbens or Jackson with any new insight into the nature of Jackson's injury.

Therefore, we conclude that the letter of September 1992 did not constitute a new claim. Because this letter did not constitute a new claim, the September letter from Gibbens did not constitute a letter of determination with appeals rights. This determination was an error of law. Accordingly, we conclude that the district court erred in determining that the hearing officer and the appeals officer had jurisdiction over Jackson's claim.

RSCVA also argues that the appeals officer ruled erroneously in finding that Jackson had a compensable injury. Given our disposition of the jurisdictional issue, we find it unnecessary to address the merits of this argument.

## CONCLUSION

We conclude that neither the hearing officer nor the appeals officer had jurisdiction to hear Jackson's case because Jackson failed to timely file a request for a hearing on Gibbens' denial of his claim. Accordingly, we reverse the order of the district court.