DEPARTMENT OF MOTOR VEHICLES AND PUBLIC
SAFETY, an Administrative Agency of The State of
Nevada; FORD MOTOR COMPANY, a Delaware
Corporation, Qualified to Do Business in Nevada,
Appellants, v. JONES-WEST FORD, INC., a Nevada
Corporation, Respondent.

No. 29112

July 28, 1998 962 P.2d 624

[Rehearing denied September 24, 1998]

*Frankie Sue Del Papa,* Attorney General, and *Mariah L.
Sugden,* Deputy Attorney General, Carson City, for Appellant
Department of Motor Vehicles.

*Wait & Shaffer,* Reno; *Lemons, Grundy & Eisenberg,* Reno;
*Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, L.L.P.,*
Kansas City, Missouri, for Appellant Ford Motor Co.

*Carelli & Miller,* Las Vegas; *Bradley, Drendel & Jeanney,*
Reno; *Guild, Russell, Gallagher & Fuller,* Reno, for Respondent.

## OPINION

By the Court, ROSE, J.:

On July 11, 1995, respondent Jones-West Ford, Inc. (Jones-West) received notice that appellant Ford Motor Co. (Ford) planned to terminate Jones-West's Ford franchise. Pursuant to its contract with Ford, Jones-West had fifteen days to appeal the notice of franchise termination to the Ford Dealer Policy Board (policy board). Under Nevada law, NRS 482.36352, a franchisee has thirty days from receipt of a notice of termination to file a protest with the Nevada Department of Motor Vehicles and Public Safety (DMV). Pursuant to this law, Ford was required to send the DMV a copy of its notice of termination; the DMV received this copy dated July 3, 1995, from Ford.

On July 13, 1995, Jones-West filed a timely appeal with the policy board. On March 20, 1996, the policy board issued a decision upholding Ford's decision to terminate Jones-West's franchise. On April 8, 1996, Jones-West filed a protest and request

for hearing with the DMV. The DMV determined that it lacked subject matter jurisdiction to consider the case on the merits because Jones-West had waited nine months to file a protest from the time it had received notice of Ford's intent to terminate the franchise, in violation of the time limits set forth in NRS 482.36352(3)(b). Jones-West petitioned the district court for judicial review. The district court reversed the DMV's decision and remanded to the agency for a hearing on the merits of Jones-West's protest. Ford and the DMV now appeal from the district court's order.

## FACTS

Jones-West entered into a Ford Sales and Service Agreement (FSSA) in 1977, at which point it became an authorized Ford dealer in Reno. According to Ford, between 1992 and 1995 Jones-West's sales performance was below the regional average; additionally, Jones-West had received consistently poor customer service and satisfaction ratings.[1] Citing "numerous" attempts by Ford to help Jones-West "cure vehicle sales deficiencies," and warnings that "continued failure" to meet sales expectations "could result in [franchise] termination," Ford sent Jones-West a notice of termination on July 3, 1995.

This notice, received by Jones-West on July 11, 1995, began with the following language:

> Notice of termination, effective as hereinafter provided, is hereby given by [Ford] of its [FSSA] . . . with Jones-West . . . (Dealer) . . . . This action is due to non-performance by the Dealer of its responsibilities under the [FSSA] as detailed herein.

The notice is then partitioned into four sections: *"Vehicle Sales Responsibilities"*; *"Termination Provisions"*; *"Dealer Policy Board Review"*; and *"Termination Effective Date."*

Under the policy board review section, the notice provides:

> In this connection, [Ford] has established a Dealer Policy Board. One of the functions of the Board is to review any termination of a sales agreement if requested to do so by the dealer concerned. This is to advise that a written request may be submitted to the Board within fifteen (15) days after receipt of this notice.

---

[1] We are cognizant of the fact that the merits of this case—that is, the propriety of Ford's decision to terminate Jones-West's franchise—have not been addressed by the DMV or the district court. We will avoid referring to matters beyond the scope of the issue of subject matter jurisdiction except where necessary to provide a context for the issue on appeal.

. . . .

If such a request is made, the Board will arrange for a conference at a suitable time.

Following this provision, the section labeled *"Termination Effective Date"* provides in pertinent part:

This notice of termination shall become effective as follows:

. . . .

4) If the Dealer requests, within such fifteen (15) day period, a conference with the Board and attends the conference scheduled; and if the Board shall confirm in writing to the Dealer this notice of termination, termination shall become effective thirty (30) days after receipt of such written confirmation, but not earlier than (90) days after receipt of this notice.

If a conference with the Board is requested and the conference scheduled is attended by the Dealer, and if the Board does not confirm this notice of termination, this notice will be deemed withdrawn and will be of no effect.[2]

(Footnote added.)

At this juncture, the language of the franchise agreement also becomes relevant. FSSA paragraph 18(b) provides:

Any protest, controversy or claim by the Dealer (whether for damages, stay of action or otherwise) with respect to any termination . . . of this agreement by [Ford] . . . shall be appealed by the Dealer to the Policy Board within fifteen (15) days after the Dealer's receipt of notice of termination . . . . *Appeal to the Policy Board shall be a condition precedent to the Dealer's right to pursue any other remedy available under this agreement or otherwise available under law. [Ford], but not the Dealer, shall be bound by the decision of the Policy Board.*

(Emphasis added.)

On July 13, 1995, Jones-West's counsel wrote to the policy board stating: "Pursuant to the terms of Notice of Termination mailed to Jones-West Ford and received July 11, 1995 please be on notice that Jones-West Ford would request an appeal to the Dealer Policy Board regarding the Notice of Termination. . . ." On October 31, 1995, Jones-West's counsel presented argument to the policy board against confirmation of the notice of termina-

---

[2]Provisions 1 through 3 of this section set forth the calculation of the termination effective date where the dealer has given notice to Ford that it will not appeal to the policy board, not given notice but failed to appeal to the policy board, or has appealed to the policy board but failed to attend the scheduled conference.

tion. On March 20, 1996, the policy board issued its decision upholding and confirming the July 3, 1995 termination decision. Therefore, pursuant to the termination effective date provision quoted above, Jones-West's franchise was to have terminated on approximately April 19, 1996.

However, on April 8, 1996 (nineteen days from receipt of the policy board's decision), Jones-West filed a protest of its franchise termination with the DMV pursuant to NRS 482.36352(3)(b) (part of the "Franchise Act"). The portions of this statute relevant on appeal provide:

> 1. *Notwithstanding the terms of any franchise, a manufacturer or distributor shall not terminate . . . any franchise unless* it has received the written consent of the dealer or:
>
> (a) *It has given written notice of its intention to the dealer and the director [of the DMV]; and*
>
> (b) Either of the following conditions occurs:
>
> (1) *The dealer does not file a protest with the director within the time allowed by this section;* or
>
> (2) After the dealer has filed a protest and the director has conducted a hearing on the matter, the director issues an order authorizing the manufacturer or distributor to terminate the franchise . . . .
>
> 2. *The notice required by this section must be given to the dealer and the director*:
>
> . . . .
>
> (b) *At least 60 days before the effective date of the intended termination . . . . The notice required by this section must include a statement of the particular grounds for the intended termination . . . .*
>
> 3. A dealer who has received a notice pursuant to this section may file a protest with the director:
>
> . . . .
>
> (b) *Within 30 days after receiving the notice . . . .*

NRS 482.36352 (emphasis added).

On May 9, 1996, at a pre-hearing conference before the DMV, Ford filed a motion to dismiss Jones-West's protest. Ford argued that the DMV lacked jurisdiction because Jones-West had waited nine months to file its protest, in violation of the thirty day provision of the above statute, NRS 482.36352(3)(b). The DMV's assigned administrative law judge granted Ford's motion and stated the following:

> It is very clear that [Ford], on July 3, 1995, gave written notice of its intention to terminate the [FSSA] that had been signed between [Jones-West] and [Ford]. *That notice was very clear* and gave [Jones-West] four different options under

which that termination was to occur. [Jones-West] made the decision to request a hearing before the Ford Dealer Policy Board. *That option clearly stated* that 30 days following a decision adverse to [Jones-West] the termination would occur.

(Emphasis added.) The judge then quoted NRS 482.36352(3)(b) and continued:

The statute is very clear that a hearing must be requested within 30 days of receipt of the notice of Termination. [Jones-West] received the July 3, 1995 Notice of termination on July 11, 1995. They did not request a hearing before the Director until April 8, 1996, well beyond the 30 day period set forth in NRS 482.26252 [sic], therefore, the [DMV] lacks jurisdiction in this matter.

On June 7, 1996, Jones-West filed a petition for judicial review of the DMV's decision.[3] The district court granted the petition[4] and on August 19, 1996, following briefing and oral argument, remanded the matter to the DMV director "for a determination of Jones-West's protest on the merits." In its "Decision Order of Remand," the district court first considered the proper standard of review of the DMV's order. Because the district court concluded that the DMV's decision was based upon its interpretation of NRS 482.36352, it found that de novo review was appropriate.

Citing Webster's dictionary, the court defined the word "effective" as "actual; taking effect; valid; operative." Applying this definition, the court reasoned that because the exact calendar date of termination could not be known until the policy board upheld Ford's notice of termination, the July 3, 1995 letter did not provide "clear notice 60 days prior to the effective date of franchise termination" as was required by NRS 482.36352(2). The court also found that paragraph 18(b) of the FSSA (quoted *supra*) mandated that Jones-West exhaust Ford's internal appeal process before seeking a remedy through the statute.

The district court concluded that Ford's July 3, 1995 letter was merely a conditional notice and lacked the requisite "clear effective date of termination" necessary under NRS 482.36352 to "trigger review/appeal deadlines." The district court concluded

---

[3]At this time, Jones-West also filed a request for injunctive relief to stay enforcement of the DMV's order and any efforts by Ford to terminate the Jones-West franchise. Concluding that Jones-West had a reasonable likelihood of success on the merits of its petition for judicial review, the district court issued an injunction.

[4]On July 8, 1996, the DMV informed the district court that it intended to participate in the judicial review process.

that the DMV therefore erred in finding that Ford's letter constituted sufficient notice. The order further stated:

> Even if the statute did not have a clear meaning on its face, it would be at best ambiguous as to the required content of notice's [sic] utilized to trigger time of filing deadlines. A review of the legislative history supports the conclusion that the legislature intended to allow for appeal of the termination of a franchise; and that notice must be given in such a manner so that the appeal process may be instituted *prior* to the effective termination date. The statute requiring procedural deadlines to be conformed with must be construed in favor of allowing the appeal to be decided on the merits if there is any ambiguity

The district court concluded that the DMV had subject matter jurisdiction and remanded to the agency for a hearing on the merits. Ford and the DMV now appeal from the district court's order of remand.

## DISCUSSION

*Standard of review*

Our role in reviewing an administrative decision is identical to that of the district court—to review the evidence before the agency so that a determination can be made as to whether the agency decision was arbitrary, capricious, or an abuse of discretion. Ruggles v. Public Service Comm'n, 109 Nev. 36, 40, 846 P.2d 299, 301 (1993). Furthermore, the final decision of an agency may be reversed by a reviewing court where the agency decision was based upon an error of law. NRS 233B.135(3)(d).

As an initial matter, the parties[5] argue as to whether the district court erred by reviewing the DMV's decision de novo. We have held that, while a reviewing court may decide pure questions of law without affording the agency any deference, "the agency's conclusions of law, which will necessarily be closely related to the agency's view of the facts, are entitled to deference, and will not be disturbed if they are supported by substantial evidence." Beavers v. State Dep't of Mtr. Vehicles, 109 Nev. 435, 438, 851 P.2d 432, 434 (1993). A "pure legal question" is one "that is not dependent upon, and must necessarily be resolved without reference to any fact in the case before the court. An example

---

[5]Ford and the DMV raise similar arguments; generally, we will refer to Ford's arguments as encompassing the DMV's assertions.

. . . might be a challenge to the facial validity of a statute." *Id.* at 438 n.1, 851 P.2d at 434 n.1.

Ford asserts that the DMV's resolution of the jurisdictional issue "was inextricably linked to the factual determination that Jones-West failed to file a timely protest." Thus, Ford argues that the agency decision was entitled to deference, and that the district court erred by invoking a de novo standard of review. In support of its petition, Ford cites the following language from *Clark County School District v. Local Government,* 90 Nev. 442, 446, 530 P.2d 114, 117 (1974):

> An agency charged with the duty of administering an act is impliedly clothed with power to construe it as a necessary precedent to administrative action. . . . Indeed, [the statute at issue] charges the board with that responsibility and great deference should be given to the agency's interpretation when it is within the language of the statute.

(Citations omitted.)

However, in *Clark County School District* the statute at issue in that case provided that the agency was to "hear and determine any complaint arising out of the *interpretation* of" the statute. *Id.* at 444, 530 P.2d at 116. The instant case raises a straightforward question of statutory interpretation—a purely legal question. *See* Manke Truck Lines v. Public Service Comm'n, 109 Nev. 1034, 1036-37, 862 P.2d 1201, 1203 (1993) (holding that questions of statutory construction are purely legal issues to be "reviewed without any deference whatsoever to the conclusions of the agency").

None of the parties disputed the operative dates that various documents were received and upon which filings and appeals were made. The only issue before the DMV was whether the statute should have been interpreted so as to bar Jones-West's protest as untimely (that is, what event triggered the running of the thirty day limit of NRS 482.36352(3)(b)). We conclude that, in this case, the district court properly invoked the de novo standard of review, and we shall do the same.

## Statutory construction of NRS 482.36352

"It is well settled in Nevada that words in a statute should be given their plain meaning unless this violates the spirit of the act." McKay v. Board of Supervisors, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986). However, where "a statute is capable of being understood in two or more senses by reasonably well-informed persons, then the statute is ambiguous" and legislative intent "is the factor which controls its interpretation." Thompson v. District Court, 100 Nev. 352, 354, 683 P.2d 17, 19 (1984).

Both the DMV and the district court concluded that NRS 482.36352 was clear on its face; nonetheless, each arrived at an interpretation contrary to the other's. As quoted in the factual statement, NRS 482.36352(1) provides that a manufacturer/distributor cannot terminate a franchise without first giving "written notice of its intention [to terminate] to the dealer and the director." The statute further provides:

2. The notice required by this section must be given to the dealer and the director:

. . . .

(b) At least 60 days before the effective date of the intended termination . . . .

[And] must include a statement of the particular grounds for the intended termination . . . .

NRS 482.36352(2)(b). The statute concludes that "[a] dealer who has received a notice pursuant to this section" has thirty days from receipt of this notice to file a protest with the DMV. NRS 482.36352(3)(b).

Ford argues that its July 3, 1995 notice of termination satisfied the clear requirements of the statute in that: (1) it stated Ford's intention to terminate Jones-West's franchise pursuant to NRS 482.36352(1); (2) it was sent to both the dealer and the director pursuant to the same section; (3) it stated grounds for terminating the franchise (i.e., deficient sales and poor customer service) pursuant to NRS 482.36352(2)(b); and (4) the notice was given to Jones-West at least sixty days prior to the effective date of the intended termination pursuant to NRS 482.36352(2)(b).

The administrative law judge agreed, concluding that the July 3, 1995 letter constituted a "very clear" notice of intent to terminate and, thus, was the type of notice contemplated by the statute that would commence the running of the thirty day protest filing period upon receipt by Jones-West. In contrast, the district court interpreted section (2)(b) of the statute as mandating that a dealer receive notice of "an actual or operative termination date" before the notice will be deemed sufficient under the statute to *start* the running of the thirty day protest period of section (3)(b). Thus, the precise interpretive issue is whether the statute contemplates a notice of intent to terminate which provides that the termination effective date hinges upon: (1) a dealer's decision to elect an internal appeal; and (2) the outcome (Ford's notice of termination provided that if the policy board did not confirm the termination, it would be "withdrawn" and of "no effect") and timing (termination was to become effective thirty days from confirmation) of that internal appeal.

Both sides present reasonable interpretations of the statute at issue; accordingly, we must adopt that construction which best effects the underlying purpose of the statute in resolving the issue at hand. The Franchise Act was enacted to address problems in franchise terminations. *See* Hearing on S.B. 543 Before the Senate Commerce & Labor Comm., 61st Leg. (Nev., April 27, 1981). The statute requires a written notice of intention to terminate at least sixty days before the effective date, and it is receipt of this type of notice that commences the running of the thirty day protest period. We conclude that because the July 3, 1995 notice of termination did not, and could not (based upon internal appeal options), provide an exact date of termination, it was not the type of notice contemplated by NRS 482.36352.

The July 3, 1995 notice was conditional upon dealer choice and subsequent outcomes (i.e., the policy board review) and, therefore, was not definite enough to put Jones-West on notice of the beginning of the thirty day period. Although the statute refers to a notice of *intent* to terminate, we conclude that it does not contemplate those notices which are conditional notices, that is, those describing a mere potentiality. The district court addressed the legislative intent, reasoning:

> The part of NRS 482.36352 before the Court at this time is clearly intended to provide an administrative procedure whereby a motor vehicle dealer may seek [DMV] review of a franchisor's decision to terminate the dealer's franchise. That legislative intent would be frustrated if a dealer was required to defend the franchise in two venues at the same time. To require dealers to immediately protest to the [DMV] upon receipt of any letter from a franchisor titled "notice of intent to terminate" whether or not the dealer could remedy the problem would create unnecessary and costly work for the [DMV] and the courts. This is analogous to a ripeness issue in constitutional law. The Nevada Legislature would not have intended that a dealer, who was in no immediate harm of franchise termination until all intra franchisor appeals were exhausted, be required to file a protest with the Director prior to the determination of the intra franchisor appeal and an actual effective date set for termination. The Legislature intended to provide an administrative remedy prior to the actual or operative date of franchise termination. By exclusion, the Legislature did not intend to provide an administrative remedy prior to a threatened or conditional notice of termination. To find the latter would require the

dealer to defend the franchise through contractually mandated intra franchisor appeal processes, and through a protest to the Director of the [DMV].

We agree with the district court's analysis.[6]

Furthermore, because termination may not even become effective pursuant to the franchisor's own internal decision-making process, we conclude it would defeat judicial economy to require the filing of an appeal which would have to be stayed and then, ultimately, withdrawn.[7] *Cf.* Ford Motor Company v. West Seneca Ford, Inc., No. 91-CV-0784E(F), 1995 WL 529613, at *2 (D. N.Y. Aug. 29, 1995) (concluding that requiring a franchisee to file a civil action in a court which would have to "hold the suit in abeyance" until the franchisee received an unfavorable policy board decision "would have resulted in a needless waste" of the court's and the parties' time). Based on the foregoing analysis, we conclude that pursuant to NRS 482.36352, notice of the actual effective date, that is, thirty days from receipt of the March 20, 1996 policy board decision confirming termination, triggered

---

[6]The language of NRS 482.36361 supports our conclusion; it provides in part:

1. If the director receives a written protest from a franchise dealer pursuant to NRS 482.36352, . . . the director shall schedule a hearing on the protest within 60 days after the director receives it. The director shall give notice as follows:

(a) To the manufacturer or distributor, that the protest has been filed, the date, time, and place of the hearing on the protest, and that he may not take the intended action which has given rise to the protest until the director has made his findings and issued an order permitting him to do so;

. . . .

2. A manufacturer or distributor who receives a notice pursuant to this section shall not proceed with the action which has given rise to the protest until the director notifies him that he has made a decision authorizing him to proceed with that action.

Although NRS 482.36361 only requires the director to schedule a hearing within sixty days, we conclude that this provision is at least some evidence of the legislature's intent to require protests only from final termination decisions. Otherwise, had Jones-West filed a protest within thirty days of receiving Ford's July 3, 1995 notice, the DMV would have been forced to grant a stay if Ford was to be allowed to conduct its contractually mandated intra-company termination review process. Thus, even if the FSSA allowed Jones-West to file a protest with the DMV, the contractual provision contemplates that the agency will hold its proceedings in abeyance until the policy board confirms termination—a period spanning over eight months in the instant case.

[7]Ford's reliance on Reno Sparks Visitors Auth. v. Jackson, 112 Nev. 62, 910 P.2d 267 (1996) (hereinafter "*RSVA*"), is misplaced. *RSVA* arose in the context of the workers' compensation statutory scheme and, unlike Ford's notice, the denial of an insurance claim is an unequivocal reflection of an insurer's final decision.

the running of the protest filing period. Accordingly, Jones-West timely filed its April 8, 1996 protest with the DMV. We, therefore, affirm the decision of the district court remanding the matter to the DMV for a hearing on the merits.

## CONCLUSION

We conclude that the statutory protest filing period began to run upon Jones-West's receipt of a final termination decision by Ford's policy board. Because Jones-West subsequently filed a protest within thirty days, the district court did not err in reversing the DMV's determination that it lacked subject matter jurisdiction because Jones-West's protest was untimely pursuant to NRS 482.36352(3)(b).

SPRINGER, C. J., and MAUPIN, J., concur.

YOUNG, J., with whom SHEARING, J., joins, dissenting:

I respectfully disagree with the majority's interpretation of the statutory limits on an automobile franchisor's ability to terminate a franchise. In my view, the notice of intended termination of franchise which Ford provided Jones-West was exactly the sort of notice contemplated by NRS 482.36352. Therefore, the receipt of this notice by Jones-West triggered the thirty-day period during which Jones-West had an opportunity to file a protest of the termination with the DMV. By failing to file a protest within this time period, I believe that Jones-West waived their right to do so.

NRS 482.36352(1)(a) provides that an automobile manufacturer or distributor cannot terminate a franchise without first giving ''written notice of its intention [to terminate] to the dealer and the director.'' NRS 482.36352(2) further provides:

> The notice required by this section must be given to the dealer and the director:
>
> . . . .
>
> (b) At least 60 days before the effective date of the intended termination . . . . [And] must include a statement of the particular grounds for the intended termination . . . .

The statute concludes that ''[a] dealer who has received a notice pursuant to this section'' has thirty days from receipt of this notice to file a protest with the DMV. NRS 482.36352(3)(b).

It is well settled that where ''the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it.'' City Council of Reno v. Reno Newspapers, 105 Nev. 886, 891, 784 P.2d 974, 977 (1989).

The majority here concludes that NRS 482.36352 contemplates a notice which provides an exact date upon which the termination

will be effective. Therefore, the majority reasons that notice which is subject to a franchisor's internal appeals process does not trigger the thirty-day time limit for filing a protest with the DMV. In my view, this interpretation belies the plain and unambiguous language of NRS 482.36352.

First, there is nothing in the text of the statute which requires the franchisor to provide an exact date of intended termination; the statute merely requires that the notice be given, depending upon the circumstances, either fifteen or sixty days prior to termination. Moreover, the statute at issue provides that the franchisor must give notice of its *intention* to terminate a franchise. The use of the word "intention" implies that the legislature wished to require that notice be given to the franchisee before the termination was a *fait accompli*. Thus, the legislature clearly understood that at the time a franchisor gives notice, the termination will be, to some extent, conditional upon future events such as an administrative appeal to the DMV or negotiations between the franchisor and the franchisee. Therefore, I believe that a notice of termination of a franchise pursuant to NRS 482.36352 need not provide an exact date of termination.

In my view, Ford's July 3, 1995 notice of termination satisfied the clear requirements of the statute in that: (1) it stated Ford's intention to terminate Jones-West's franchise pursuant to NRS 482.36352(1); (2) it was sent to both the dealer and the director pursuant to the same section; (3) it stated grounds for terminating the franchise (i.e., deficient sales and poor customer service) pursuant to NRS 482.36352(2)(b); and (4) the notice was given to Jones-West at least sixty days prior to the effective date of the intended termination pursuant to NRS 482.36352(2)(b). Accordingly, pursuant to NRS 482.36352(3)(b), Jones-West had thirty days from receipt of this notice in which to file a protest of the termination with the DMV. By failing to timely file such a protest, Jones-West waived this right.

For these reasons, I would reverse the judgment of the district court and reinstate the order of the DMV dismissing Jones-West's complaint for lack of jurisdiction. Therefore, I respectfully dissent.