OPINION
By the Court,
Hardesty, J.:
In this appeal, we decide whether a party against whom a judgment is rendered in a breach of contract and warranty action may offset that judgment by the amount the prevailing party obtained in a settlement with other parties. We conclude that Nevada decisional law, the Uniform Joint Obligations Act (UJOA)[1] and the Restatement (Second) of Contracts[2] provide a basis for an offset when no express agreement exists for offset, indemnification, or contribution.

FACTS AND PROCEDURAL HISTORY

Respondent All-American Golf Center, Inc. (AA), constructed Calloway Golf Center’s nine-hole golf course in Las Vegas. AA hired Bentar Development, Inc., as the general contractor, Swisher *871 & Hall as the architect, and appellant Western Technologies, Inc. (WT), as the project’s engineer and soil tester.
When the construction was completed, it became apparent that several constructional defects existed. Primarily, the retaining wall for the upper deck tee line of the golf center’s driving range was defective. In addition, poorly compacted soil behind the retaining wall caused soil subsidence, which resulted in excessive cracking along the retaining wall.
AA brought suit against Bentar, Swisher & Hall, and WT for breach of contract, breach of express warranty, negligence, and unjust enrichment for the constructional defects. Bentar joined other third-party defendants, alleging various theories of liability, contribution, and indemnification. Before trial, Bentar, Swisher & Hall, and all third-party defendants reached a settlement with AA in the amount of $880,000. Subsequently, the district court granted the settling parties’ motion for a determination of a good-faith settlement under NRS 17.245. The parties did not, however, request the district court to allocate the settlement amount among the various constructional defects.
Following the district court’s good-faith determination and approval of the settlement, AA withdrew its causes of action for negligence and unjust enrichment and proceeded to trial against WT on its breach of contract and breach of warranty claims concerning the defective retaining wall only. During pretrial hearings, the parties and the district court agreed that AA could present evidence of all damages it sustained as a result of the defective retaining wall, the jury should not apportion damages between WT and the settling defendants, and the jury could hear evidence of actions by the settling defendants concerning the retaining wall but would only decide WT’s liability. No evidence of the settlement, however, could be introduced at trial. At trial, the parties presented evidence of the settling parties’ conduct with respect to the retaining wall, and AA presented its damages in excess of $3,000,000, which included costs to repair the retaining wall, loss of the facility’s use caused by the defective wall, and lost profits during the retaining wall’s repair. WT contested the amount of each damage claim.
At the close of trial, the jury was instructed on the elements of AA’s claims for breach of express warranty and breach of contract. The jury was instructed to determine WT’s liability only. On the issue of damages, the jury was instructed that if it found that WT had breached the contract, it could award AA damages for its cost of repair, loss of use, and lost profits.[3] There was, however, no instruction limiting the award of damages to just those amounts *872 caused by WT. The parties and district court agreed to a special verdict form that required the jury to specify, in the event it found liability, AA’s damages for its costs to repair, loss of use of the facility, and lost profits.
The jury found for WT on AA’s breach of contract claim but found WT liable for breach of the express warranty. Accordingly, the jury awarded AA damages of $350,000 for the cost to repair, $250,000 for the loss of the facility’s use, and $60,000 for lost profits during the repair period, for total damages of $660,000.
Thereafter, WT moved to offset the $660,000 jury verdict by AA’s $880,000 settlement with the other defendants. WT argued that AA presented its total retaining wall damages to the jury, while pointing out that no apportionment was allowed. As a result, WT asserted, instructing the jury to determine its liability did not result in an apportionment of damages attributable to WT. Thus, WT maintained that an offset was warranted.
The district court found that the jury was instructed to determine only WT’s liability and that the settlement, when added to the amount of the jury award, was consistent with the total amount of damages alleged by AA. The district court entered an amended judgment on the jury award of $660,000, denying WT’s motion for offset and awarding attorney fees, costs and prejudgment interest to AA as the prevailing party. This appeal, challenging the offset denial, followed.

DISCUSSION

The question of whether a party, in a contract action, is entitled to have amounts from codefendants’ and other third parties’ settlements with the plaintiff deducted from a jury verdict for total damages levied against it is one of first impression for this court. We conclude that, based on Nevada decisional law, the UJOA, and theories described in section 294(3) of the Restatement (Second) of Contracts, the offset rule may be applied in contract actions.
First, Nevada decisional law has acknowledged that the offset rule is an equitable remedy[4] based on policies rooted in contract principles. In Greco v. United States,[5] this court explained that the offset rule has origins in the “expectancy rule” of damages in contract law. The purpose behind the expectancy rule is ‘ ‘to place the plaintiff in the position he or she would have been in had the contract been performed,”[6] which in turn prevents double recovery.[7] *873 The offset of a jury award of total damages by a settlement amount with other parties serves to prevent excess recovery by the plaintiff.
Second, a provision of the UJOA, NRS 101.040, deals with payments credited to co-obligors in situations where joint obligations exist, providing:[8]
The amount or value of any consideration received by the obligee from one or more of several obligors, or from one or more of joint, or of joint and several obligors, in whole or in partial satisfaction of their obligations, shall be credited to the extent of the amount received on the obligations of all coobligors to whom the obligor or obligors giving the consideration did not stand in the relation of a surety.
Questions of statutory construction are reviewed de novo.[9] The language of this particular section does not expressly state whether it applies in tort, in contract, or in both. When analyzing an ambiguous statute, the court should “read [it] as a whole to give meaning to all of its parts.”[10] NRS 101.020 defines the terms used in the UJOA, NRS Chapter 101. It defines “obligation” as including liability in tort, “obligee” as including a person having a right based in tort, and “obligor” as including a person liable in tort. But, the word “includes” is encompassing, not limiting, and the fact that contract liability is not mentioned does not mean that the statute does not apply here. NRS 101.040 uses terms, like “consideration,” “satisfaction,” and “surety,” that are commonly used in contractual situations. The repeated use of the word “includes” and the use of contractual terms in NRS 101.040 shows that NRS 101.040 is not limited to tort actions. After reading the act as a whole in order to give meaning to all its parts, we conclude that NRS 101.040 applies to contract actions as well as actions in tort, and that it permits offsets between co-obligors.
*874 Finally, the Restatement (Second) of Contracts, section 294(3) states that “[a]ny consideration received by the obligee for discharge of one promisor discharges the duty of each other promisor of the same performance to the extent of the amount or value received.’ ’ The Ninth Circuit Court of Appeals, in Evanow v. M/V Neptune, cited section 294(3) in adopting the “universal rule” that damages in contract actions should be offset, to the extent that they overlap, by “the amount of the settlement with a co-obligor.”[11] Therefore, it is well-established in other jurisdictions that an obligor is entitled to an offset by the amount of the settlement for the same damages between the obligee and a co-obligor.
With the above principles in mind, we conclude that an obligor may offset an award of total damages by the amount of the obligee’s settlement with a co-obligor in contract actions, to the extent that the amounts reflect the same damages. This will ensure that the obligee is restored to the position he or she would have been in had the contract been performed and prevent that party from receiving a double recovery.
WT argues that in reaching the above conclusion, this court should also apply NRS 17.245 to contract actions. NRS 17.245 outlines how a release or covenant not to sue affects judgments in tort actions, providing that any settlement entered into between a plaintiff and a tortfeasor does not discharge other tortfeasors from liability, that the claim against a nonsettling tortfeasor is reduced by any amount stipulated by the release or covenant, and that the settling tortfeasor is discharged from all liability for contribution and equitable indemnity. The language of this statute is plain and unambiguous. It outlines how a release or covenant not to sue affects a party’s rights in actions commenced under tort law. Additionally, NRS 17.245(l)(a) expressly describes when this statute applies. It specifically applies “[wjhen a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death.” Thus, NRS 17.245 applies to tort actions only and cannot be extended to trials of contract actions.
*875 Further, this court presumes that a jury followed the instructions given to it by the district court.[12] Here, the instructions did not instruct the jury to award AA only those damages caused by WT’s breach of warranties. Instead, the special verdict form merely directed the jury to “award damages in favor of [AA] in the amount of_.” In addition, another instruction asked the jury to specify the “total amount of damages in favor of [AA]” and did not direct the jury to award the total amount of damages caused solely by WT. Accordingly, the presumption has not been rebutted here, as the record does not support the conclusion that the jury determined WT’s several liability and damages.
Further, the district court improperly relied on jury instruction no. 36 in determining that the jury had apportioned damages. While this instruction directed the jury to decide only WT’s liability and “not consider or decide the liability of any other party,” there was no similar instruction concerning WT’s several damages. Whether WT is liable for breach of contract or express warranty is an entirely separate issue from the amount of damages caused by the breach. Never was the jury instructed to apportion the damages caused by any party other than WT. In the absence of specific language directing the jury to award only those damages WT caused, it must be presumed that the jury awarded AA the total damages it suffered.
Moreover, the parties agreed in pretrial motions that neither side would present evidence of damages apportionment. Therefore, no evidence was admitted that provided the jury with a basis to apportion damages. AA presented evidence of the total costs of repair, loss of use, and lost profits proximately caused by the defective retaining wall. Thus, when looking at the record as a whole, we conclude that the jury followed the instructions given by the district court and held WT liable for the total damages AA incurred as a result of the defective retaining wall. When a district court instructs a jury to award all damages and fails to instruct the jury to apportion those damages, it is error for the court to assume that the jury apportioned damages among nonparties simply because it returns an award lower than that requested by the plaintiff.
This court will review an order granting or denying a motion for offset under an abuse of discretion standard.[13] In this case, the dis *876 trict court abused its discretion in its overbroad rejection of WT’s offset request. As WT sought an offset for the entire amount of the settlement paid by the codefendants and other third-party defendants, however, and this sum may have included amounts for other constructional defects in the golf center, WT may not be entitled to offset the judgment by the entire settlement amount. Instead, an offset may be applied only to the judgment amount that mirrors the portion of the settlement attributable to the retaining wall defects. To the extent that the district court can determine this sum, WT is entitled to an offset of the total damages found by the jury to have been caused by the defective retaining wall.
Accordingly, we reverse the portion of the district court’s amended judgment denying an offset and remand this matter for further proceedings on that issue. As the amount of any offset, and consequently, the amount due AA on the jury verdict, must be redetermined, we necessarily vacate the portion of the amended judgment awarding prejudgment interest, attorney fees, and costs. As those awards may be reconsidered on remand, we do not reach WT’s arguments as to their propriety. Finally, as WT has not challenged the jury’s verdict itself, but only the amount owed in light of any offset, we affirm the portion of the district court’s amended judgment reflecting the jury’s verdict.

CONCLUSION

An obligor is entitled to an offset by the amount of the obligee’s settlement with a co-obligor in contract actions, to the extent that the judgment and settlement are duplicative. And here, the district court abused its discretion in reasoning that by instructing the jury to determine WT’s liability, a proper apportionment of damages logically followed. Accordingly, as the jury awarded AA total damages for the defective retaining wall, WT was entitled to an offset for settlement amounts other parties paid with respect to the defective retaining wall. We affirm the portion of the district court’s amended judgment reflecting the jury verdict, reverse the portion of the amended judgment denying an offset, and vacate those portions of the amended judgment pertaining to prejudgment interest, attorney fees and costs. We remand this matter to the district court for further proceedings consistent with this opinion.
Rose, C. J., and Gibbons, J., concur.

 NRS 101.040.

 Restatement (Second) of Contracts § 294(3) (1981).

 The jury was instructed on the measure of damages for the breach of contract claim. It appears that the parties relied on those instructions for deciding the measure of damages for the breach of express warranty claim as well.

 Aviation Ventures v. Joan Morris Inc., 121 Nev. 113, 119, 110 P.3d 59, 63 (2005).

 111 Nev. 405, 413, 893 P.2d 345, 350 (1995).

 Id.

 Colorado Environments v. Valley Grading, 105 Nev. 464, 471-72, 779 P.2d 80, 84 (1989) (noting that receiving lost profits and unavoidable costs placed *873 the plaintiff in the position it would have been had the contract been performed, but “[a]n award of equipment standby damages . . . would permit a double recovery and give [plaintiff] a windfall”).

 AA contends that WT waived its right to raise an argument based on NRS 101.040 because it did not specifically address this statute in the proceeding below. “Parties ‘may not raise a new theory for the first time on appeal, which is inconsistent with or different from the one raised below.’ ’ ’ Dermody v. City of Reno, 113 Nev. 207, 210, 931 P.2d 1354, 1357 (1997) (quoting Powers v. Powers, 105 Nev. 514, 516, 779 P.2d 91, 92 (1989)). WT raised the theory of offset in the proceeding below. NRS 101.040 deals with offsets. Thus, we conclude that WT did not waive its right to rely on NRS 101.040 on appeal.

 See State, Dep’t Mtr. Veh. v. Jones-West Ford, 114 Nev. 766, 772, 962 P.2d 624, 628 (1998).

 Metz v. Metz, 120 Nev. 786, 792, 101 P.3d 779, 783 (2004) (citing Edgington v. Edgington, 119 Nev. 577, 583, 80 P.3d 1282, 1287 (2003)).

 163 F.3d 1108, 1119 (9th Cir. 1998); see also RPR & Assoc. v. Univ. of N.C. Chapel Hill, 570 S.E.2d 510, 519 (N.C. Ct. App. 2002) (stating that in a contract action, a defendant is entitled to offset payment of a settlement by a third party for damages from a similar claim regarding the same subject matter); Summit Properties v. PNM, 118 P.3d 716, 730-32 (N.M. Ct. App. 2005) (concluding that a settlement of a breach of contract claim could be used to offset damages awarded on that claim).

 Krause Inc. v. Little, 117 Nev. 929, 937, 34 P.3d 566, 571 (2001).

 See Eagle Point Condominium Owners Ass’n v. Coy, 9 P.3d 898, 902 (Wash. Ct. App. 2000).