141 P.3d 1224 (2006)
HERBST GAMING, INC.; Golden Gaming, Inc., d/b/a Pt's Pub; Nevada Tavern Owners Association; United Coin Machine Company; Nevada Petroleum Marketers & Convenience Store Association; Sean Timothy Higgins; and Peter Krueger, Appellants,
v.
Dean HELLER, Secretary of State; American Cancer Society; American Heart Association; Nevada Tobacco Prevention Coalition; and American Lung Association, Respondents.
No. 47620.
Supreme Court of Nevada.
September 8, 2006.
*1226 Jones Vargas and Kirk B. Lenhard and Ariel E. Stern, Las Vegas, and John P. Desmond, Reno, for Appellants.
George Chanos, Attorney General, and Joshua J. Hicks, Deputy Attorney General, Carson City, for Respondent Dean Heller, Secretary of State.
Keith Loomis, Carson City; Maria Elizabeth Pence, Carson City, for Respondents American Cancer Society, American Heart Association, Nevada Tobacco Prevention Coalition, and American Lung Association.
Schreck Brignone and Todd L. Bice and Lawrence J. Semenza III, Las Vegas, for Amici Curiae Nevada Resort Association, Nevada Hotel & Lodging Association, and Nevada Tourism Alliance.
Before the Court En Banc.

OPINION
PER CURIAM.
This is an appeal from a district court order declining to remove the Nevada Clean Indoor Air Act initiative (NCIAA) from the November 2006 ballot. We take this opportunity to clarify what types of objections are properly considered in a preelection challenge to an initiative. While challenges based on alleged procedural irregularities and specific constitutional or statutory requirements for initiatives may be considered preelection, those that allege that a measure, if approved, may violate substantive federal or state constitutional provisions are not appropriate for preelection determination. Several of appellants' and amici curiae's arguments are not properly considered at this time because they allege that, if enacted, the NCIAA may violate due process, equal protection, or the right to privacy. Further, the remaining objections do not warrant the initiative's removal from the ballot. Consequently, we affirm the district court's order denying declaratory and injunctive relief. As the district court lacked authority to interpret the proposal to apply to hotel and motel rooms, however, its ruling in this regard is void.

FACTS
Appellants are business entities, such as bars, taverns, and convenience and grocery stores with gaming areas, where smoking is currently permitted, and their related organizations. If the NCIAA is passed, these entities will be compelled to further restrict smoking and in some instances prohibit it entirely. Amici curiae are associations with memberships of large hotels and casinos, which would also be required to restrict smoking in locations where it is currently permitted. Appellants and amici curiae (collectively "opponents") believe that the proposed smoking restrictions will adversely affect their businesses, and so they oppose the measure. Respondents are the initiative's proponents: the Nevada Tobacco Prevention Coalition and its members, the American Cancer Society, the American Heart Association, and the American Lung Association, all nonprofit entities. Secretary of State Dean Heller is a nominal respondent; he has taken no position on the merits of the appeal.
The NCIAA calls for the enactment of new statutes to be added to NRS Chapter 202, which governs crimes against public health and safety. Its proponents state that for several years, as the health dangers associated with secondhand smoke have become increasingly apparent, they have lobbied the Nevada Legislature for more stringent prohibitions on smoking in public areas. After these efforts met with limited success, the proponents drafted the NCIAA. Its stated purpose is to protect children and families from secondhand smoke in public areas.[1]
*1227 The subject of smoking in public places is now governed by NRS 202.249-202.24925. In particular, NRS 202.2491 lists locations where smoking is and is not permitted, and NRS 202.24915 specifically addresses smoking in gaming areas of grocery and convenience stores. The NCIAA would significantly expand the locations in which smoking is prohibited. And the current sanctions, a civil penalty of $100 and criminal penalties for a misdemeanor, would remain in place.[2] Notably, under the NCIAA, smoking would be permitted in casino gaming areas, where no one under 21 is permitted to "loiter,"[3] but not in other parts of a casino, where children are permitted. Smoking would also be allowed in "stand-alone" bars (i.e., those that do not serve prepared food, for which they must have a food-preparation license), and in "private residences," a term that is not defined in the measure itself. The NCIAA would prohibit smoking in restaurants and bars with a food-handling license (except for outdoor seating areas), grocery stores, and convenience stores.
Another key change within the NCIAA concerns local regulation: under the present statutory scheme, local governments, except for school districts, may not impose more stringent restrictions on smoking.[4] The NCIAA would allow a locality to approve restrictions in addition to those contained in the NCIAA itself. The initiative provides that any law that is inconsistent with the initiative is "null and void." Thus, if approved, the initiative would vacate portions of NRS 202.2491 and NRS 202.24915, the statutes that now prescribe where smoking can and cannot occur, replacing them with the initiative's language.
After filing the NCIAA initiative petition with the Secretary of State, the Nevada Tobacco Prevention Coalition gathered signatures and submitted them to the Secretary for validation. The Secretary determined that sufficient signatures had been gathered, and the initiative was therefore presented to the Legislature in February 2005. That same month, the opponents filed a complaint in district court seeking to require the Secretary to recall the measure from the Legislature and to "take no further action" on the measure.
The Assembly Judiciary Committee considered the instant initiative, as well as a competing measure sponsored by the opponents and other similar entities (bars, convenience stores, casinos) in March 2005. The Committee decided that the competing anti-smoking initiatives should go to the voters, and so it deliberately let the 40-day time period specified in the Nevada Constitution lapse.[5] Thus, under the Constitution, the initiative was automatically to be included on the November 2006 ballot.[6]
The district court did not hold an injunction hearing before the Assembly Judiciary Committee hearing. Briefs were filed by the parties and by amici curiae, and the district court held a hearing in late March 2005. The district court asked appellants if they had any evidence to put on, and they responded in the negative, that they were prepared to submit the matter on oral argument and affidavits in the record. For unknown reasons, the district court did not issue its decision for more than one year, until June 5, 2006. The district court ruled that the initiative should not be removed from the ballot. Additionally, the court's order included a determination that hotel and motel rooms would be included in the smoking prohibition, despite the proponents' position that these rooms were not intended to be included.
This appeal followed.

DISCUSSION
The opponents raise several arguments in support of their position that the NCIAA should not be placed on the ballot, including a procedural objection that the NCIAA's title and its proponents' statements during signature-gathering concerning whether hotel and *1228 motel rooms were included were fatally misleading; contentions that the measure violates the constitutional requirement that any appropriation must include a revenue-raising provision and that it must satisfy the requirements for a referendum; and assertions that, if passed, the NCIAA would violate due process, equal protection, and the right to privacy.

Preelection review
A threshold issue that must be resolved in this appeal is to what extent we may entertain preelection challenges to initiative measures. In considering preelection review of an initiative last year, the Washington Supreme Court, in Coppernoll v. Reed,[7] noted that challenges to voter initiatives generally fall within three areas: (1) the procedural requirements for placing a measure on the ballot were not met; (2) the subject matter is not appropriate for direct legislation under constitutional or statutory limits on the initiative power; and (3) the measure, if passed, would violate substantive federal or state constitutional provisions.
Challenges falling within the first category, based on asserted procedural defects, are virtually always ripe for preelection review, since the question to be resolved is whether a proposal has satisfied all constitutional and statutory requirements for placement on the ballot. Courts have routinely addressed the merits of such a dispute at the preelection stage.[8]
Challenges of the second type, that the subject matter is not proper for direct legislation, are usually considered.[9] These challenges frequently arise in city or county initiative measures based on limits imposed on the locality's self-governing power by its establishing charter.[10] Another challenge of this type is the charge that a statutory initiative is administrative rather than legislative, since the statutory initiative power is limited to legislative acts.[11] Finally, specific restrictions on the initiative power can give rise to objections in this category, such as single-subject restrictions and limitations on whether or when an initiative may include an appropriation.[12]
*1229 Courts generally refuse, at the preelection stage, to consider challenges of the third type: that the measure, if enacted, would violate substantive federal or state constitutional provisions.[13]
In Coppernoll, the Washington Supreme Court noted that imprecise language can result in a failure to distinguish between the different types of challenges. The opponents in that case asserted that, if enacted, the proposed measure would violate the right to a jury trial and the separation of powers doctrine; they maintained that this objection was based on a limit to the initiative power, that is, laws passed by initiative must be constitutional. The court rejected the opponents' attempt to conform their substantive constitutional objection into an argument concerning limits on the initiative power. In doing so, the court pointed out that if substantive constitutional challenges were allowed in the guise of procedural or subject matter challenges, it would open the floodgates to almost any kind of preelection challenge: "Not only would this infringe upon the constitutional rights of the people, but it would needlessly inject our courts into a political dispute that is time sensitive.... We do not substantively review the legislature's bills before enactment, and will not do so with the people's right of direct legislation."[14]
The Alaska Supreme Court has also carefully distinguished between procedural/subject matter challenges and substantive constitutional challenges: "One type of challenge invokes `the particular constitutional and statutory provisions regulating initiatives'";[15] this type of challenge may be reviewed preelection. "Other challenges are grounded in `general contentions that the provisions of an initiative are unconstitutional'"[16] and are generally not appropriate for preelection review.
Nevada cases have not explicitly identified the categories of initiative challenges, but they have generally followed the majority of jurisdictions as described above. In particular, until 1992, we consistently reviewed objections of the first and second type at the preelection stage but declined to consider substantive constitutional objections preelection. A representative case illustrating our pre-1992 position is Las Vegas Chamber of Commerce v. Del Papa,[17] in which this court considered an appeal from a district court order that dismissed a complaint for injunctive relief, seeking to prevent an initiative from appearing on the ballot. On appeal, the initiative opponents argued that the initiative would violate the Federal Constitution. We explained that this potential constitutional problem was not enough to warrant removing the initiative from the ballot:
Assuming, arguendo, that the [opponents] are correct, this would be an insufficient *1230 reason to preclude the people of this state from exercising their right to vote for or against an initiative petition.
In Caine v. Robbins, 61 Nev. 416, 131 P.2d 516 (1942), this court held that ballot questions may be enjoined "where a plain, palpable violation of the constitution is threatened." This rule has remained inviolate in an unbroken line of cases that has stood for almost fifty years.
All of the cases in which this court has intervened to prevent a ballot question from going to a vote of the people have involved violations of the state constitutional or statutory rules governing the procedures by which those questions were placed on the ballot.
The authorities cited above demonstrate that this court has never voided a ballot question because it may be held in the future to violate a provision of the United States Constitution. Such action would be unwise for two reasons. First, a measure that initially appears unconstitutional may be implemented in a constitutional manner. Second, even if an initiative measure is unconstitutional, there is great political utility in allowing the people to vote on the measure. Such a vote communicates clearly to the representative branches of government the popular sentiment on a particular issue or issues.[18]
Notably, the case cited in the above quote, Caine, involved application of the express constitutional requirement that an initiative contain an enacting clause.[19] Thus, the "plain and palpable" constitutional violation contemplated by Caine did not concern the initiative's substance violating a state or federal constitutional provision, if enacted.
In 1992, however, in Stumpf v. Lau,[20] this court took a different analytical approach in voiding an initiative that would have imposed term limits on United States representatives and senators from Nevada. This court granted a preelection writ petition challenging the initiative, because "[t]he term limits initiative clearly and `palpably' violates the qualifications clauses of Article I of the United States Constitution."[21] Continuing, the court explained that "[u]nlike the ballot question at issue in Las Vegas Chamber of Commerce [which arguably might have been applied in a constitutional manner], the ballot question in the instant case falls squarely into the category of initiative measures defined in Caine which are subject to removal by this court."[22]
More recently, in Garvin v. District Court,[23] we retreated somewhat from Stumpf's broad language. Specifically, this court explained that since the initiative met "the threshold constitutional requirement that it propose legislation, we decline to address the ... other arguments regarding the measure's substantive validity in this proceeding."[24] And we "reiterate[d] that, although an initiative or referendum is subject to pre-election challenge to its threshold validity, when a proposed initiative or referendum meets all threshold procedural requirements, pre-election review of substantive challenges is not generally permitted."[25] But we also observed that the opponents of an initiative "are not left without a judicial remedy, however, since the substantive validity of all legislation may be challenged after it is enacted."[26]
Our conclusion in Garvin is supported by the decisions of most courts considering the issue.[27] Essentially, the issue is closely related to the ripeness doctrine, which we explained in Matter of T.R.:[28]
Although the question of ripeness closely resembles the question of standing, ripeness *1231 focuses on the timing of the action rather than on the party bringing the action.... The factors to be weighed in deciding whether a case is ripe for judicial review include: (1) the hardship to the parties of withholding judicial review, and (2) the suitability of the issues for review.
A primary focus in such cases has been the degree to which the harm alleged by the party seeking review is sufficiently concrete, rather than remote or hypothetical, to yield a justiciable controversy. Alleged harm that is speculative or hypothetical is insufficient: an existing controversy must be present.[29] While harm need not already have been suffered, it must be probable for the issue to be ripe for judicial review.[30] Preelection challenges to an initiative's substantive constitutionality are not ripe. They lack a concrete factual context in which a provision may be evaluated, and any harm is highly speculative since the measure may not even pass at election time.
Garvin appropriately iterated that the substantive validity of an initiative should be challenged if and when the initiative becomes law. Stumpf is an anomaly in our preelection initiative review jurisprudence. And Stumpf failed to recognize the political utility in allowing the electorate to vote on a measure, even one ultimately destined to fail on constitutional grounds. Consequently, to the extent that Stumpf endorses preelection review of an initiative's substantive provisions, we expressly overrule it. Such review must occur after an initiative becomes law. In light of this conclusion, we will not consider the opponents' arguments that, if enacted, the NCIAA violates the Due Process and Equal Protection Clauses of the State and Federal Constitutions, as well as the right to privacy.

Allegedly misleading signature-gathering
The initiative's opponents maintain that, when gathering signatures for the proposed measure, its proponents misinformed voters about what types of bars and taverns would be covered because, according to them, the meaning of the phrase "stand-alone bar" is not self-evident but instead is "buried" in the measure's text.[31]
The opponents' argument is based on language in Stumpf. In that case, the initiative's opponents argued that because the petition contained no enacting language, a signer could not determine what type of initiative was being proposed, i.e., a statute or a constitutional amendment. While some promotional materials indicated that a constitutional amendment was intended, the initiative itself never mentioned the constitution. Stumpf determined that absent such language, signers were not adequately informed of the "nature and purpose" of the *1232 initiative, and thus the measure should be removed from the ballot.[32]
Here, the opponents' argument strains Stumpf's language. In contrast to the Stumpf initiative, the NCIAA's title clearly states that the measure's purpose is to prohibit smoking in most public places, with the exception of casinos and "stand-alone bars." If a signer questioned the phrase's meaning, he or she had only to read the one-and-a-half page initiative itself to find the definition, which was set forth in the text. Also, the imprecision in Stumpf concerned the fundamental matter of whether a statute or a constitutional amendment was proposed; here, the initiative's primary purpose of enacting a statute to prohibit smoking in most public places is clear. In this regard, the Colorado Supreme Court has opined that a ballot measure's summary and title "need not be the best possible statement of a proposed measure's intent" or "address every aspect of a proposal."[33] Rather, the purpose is to "`present straightforward, succinct, and nonargumentative titles and summaries.'"[34] In order to clarify the NCIAA's coverage with respect to bars, we direct the Secretary of State to clearly indicate that the measure covers all bars with food-handling licenses in his explanation and condensation, which will accompany the initiative.[35] Additionally, the opposition committee preparing the arguments and rebuttal against the initiative, which will also accompany the measure on the ballot, may point out its broad coverage of bars.
Amici curiae make a similar argument based on the district court's conclusion that the measure would encompass hotel and motel rooms. Specifically, amici curiae contend that since the initiative's proponents consistently indicated that hotel and motel rooms were not included in the smoking ban, the measure's title is unconstitutionally misleading in light of the district court's conclusion that these rooms are included.
We need not consider amici curiae's hotel/motel room argument, however, because the district court lacked authority at the preelection stage to interpret the proposal to include hotel and motel rooms. Just as substantive constitutional arguments, which generally must be evaluated in the context of a concrete factual situation, are improperly considered before an initiative becomes law, so did the district court improperly attempt to apply the measure to a hypothetical set of facts. Essentially, the district court's determination was an improper advisory opinion.[36] Thus, it is void. If the measure passes, then it may be applied and interpreted according to well-settled rules of statutory construction.[37]

Appropriation
Nevada Constitution Article 19, Section 6 prohibits any initiative that "makes an appropriation *1233 or otherwise requires the expenditure of money, unless such statute or amendment also imposes a sufficient tax, not prohibited by the Constitution, or otherwise constitutionally provides for raising the necessary revenue." The opponents argue that the NCIAA will require funds for its enforcement and thus must include a method to raise the necessary revenue. The district court concluded that the expense inherent in the general enforcement of criminal statutes is not an "expenditure" within Section 6's scope; thus, the NCIAA's lack of a funding mechanism does not render it invalid.
Compliance with Article 19, Section 6's appropriation or expenditure provision is properly evaluated at the preelection stage.[38] In Rogers v. Heller, this court recognized that "an appropriation is the setting aside of funds, and an expenditure of money is the payment of funds."[39] Stated differently, an initiative makes an appropriation or expenditure when it leaves budgeting officials no discretion in appropriating or expending the money mandated by the initiative  the budgeting official must approve the appropriation or expenditure, regardless of any other financial considerations.[40] The requirement that an initiative involving an appropriation or expenditure include a revenue-generating provision prevents the electorate from creating the deficit that would result if government officials were forced to set aside or pay money without generating the funds to do so.[41]
Here, the NCIAA does not make an appropriation or require the expenditure of money. It simply expands the statutory list of public places in which smoking is unlawful[42] and leaves untouched the provisions that set forth the penalty for smoking in an area in which smoking is prohibited.[43] Therefore, the NCIAA merely expands the statutorily delineated areas within which one may be subject to criminal and civil penalties for smoking.
In particular, the NCIAA requires neither the setting aside nor the payment of any funds.[44] Further, and significantly, the NCIAA leaves budgeting officials' discretion entirely intact. It does not, for example, compel an increase or reallocation of police officers to enforce its provisions. Because the NCIAA neither explicitly nor implicitly compels an appropriation or expenditure, but rather, leaves the mechanics of its enforcement with government officials, it does not involve an appropriation or expenditure warranting a revenue-generating provision.

Initiative v. referendum
The NCIAA seeks to amend existing statutes by imposing stricter nonsmoking prohibitions. It does not ask the voters to approve or disapprove the current scheme, although implicitly, a vote in favor of the initiative expresses some dissatisfaction with the current statutes. Specifically, the initiative is based on existing statutes, NRS 202.2491 and 202.24915. Rather than provide a red-lined version of the current statutes with the proposed amendments, the initiative's proponents have asked voters to "amend NRS Chapter 202" by "adding a section that reads as follows," and by declaring inconsistent portions of the existing statutes "null and void."
The opponents argue that the "null and void" language renders the measure a referendum *1234 and that it must fail because the proponents did not set forth the full text to be approved or disapproved[45] and because they filed the petition too early.[46] They rely on an unpublished Ohio Court of Appeals decision that, in dictum, suggested that a measure appeared to impermissibly combine a referendum with an initiative and that a referendum would be untimely.[47] This court has, however, previously considered initiatives that sought to amend existing statutes and did not require that those measures also satisfy referendum requirements.[48] Also, California courts have noted that "[e]nactment is not a quality of the referendum"[49] and that "[w]hen a statute replaces a prior statute, filling its function and adopting much of its wording, we would normally assume the new law takes effect upon the demise of its predecessor."[50] Here, the initiative clearly does not seek simply to reject Nevada's current anti-smoking statute, but to enact one with broader coverage. And the "null and void" provision is unnecessary since, if adopted, the new measure would replace the old version. Certainly, this language does not render the measure a referendum. Consequently, as this and the other arguments that are properly considered preelection do not warrant removing the NCIAA from the ballot, we affirm the district court's order denying injunctive or declaratory relief.

CONCLUSION
Preelection initiative challenges are properly considered when they allege procedural defects or assert that a measure does not satisfy an explicit constitutional or statutory requirement for initiatives. Attacks based on the alleged unconstitutionality of the measure, if it were passed, are not appropriate for preelection review. With respect to the opponents' arguments that are properly considered at this stage, the NCIAA does not make an appropriation and thus need not raise revenue, and it is not a referendum. Additionally, the phrase "stand-alone bar" does not so mislead the voters that the measure should be removed from the ballot. Accordingly, it should remain on the ballot. But we instruct the Secretary of State to include in his condensation and explanation of this measure a clear statement that the NCIAA would prohibit smoking in all bars with a food-handling license. Finally, as the district court lacked authority to issue an advisory opinion concerning whether the measure might be interpreted to include hotel and motel rooms, we vacate its order with respect to this issue.[51]
ROSE, C.J., concurring in part and dissenting in part.
An initiative petition should present a straightforward, accurate, succinct and nonargumentative statement of the proposition in its title and the body of the initiative.[1] This initiative's description of a "stand-alone bar" is anything but straightforward and accurate, and for that reason I dissent to that portion of the majority's opinion holding to the contrary.
The initiative begins by stating in section 1 that the smoking ban will not apply to *1235 "stand-alone bars." In section 2(3)(b), it again reiterates that "stand-alone bars" are excluded from the smoking prohibition. Not until the definitions at the end, section 2(9)(k), does the initiative define "stand-alone" bars as those bars that are not licensed to serve food. This substantially limits the scope of the "stand-alone" bar exception, and the prohibition now includes the vast majority of "stand-alone bars" in the state. The title further perpetuates the initiative's misleading nature by only referring to "stand-alone bars."
The breadth of the smoking ban is an essential part of the proposition, and I am sure many signatures were obtained because the signer believed that casinos and "stand-alone bars" would not be included in the prohibition, whether they served food or not  the initiative provided as much in sections 1 and 2(3)(b), and in the title itself. While the majority points out that a signer could read through the entire initiative to find the very limiting definition of "stand-alone bars," it is primarily the initiative's sponsors' responsibility to make the language throughout the initiative straightforward and accurate.[2]
The initiative espouses the noble purpose of protecting children from second-hand smoke. Unfortunately, this purpose is made far less regal by the misleading representations made in the initiative. I would hold the initiative sponsors to the representations they made in most of the initiative and exclude from the smoking prohibition any "stand-alone bar," whether it can serve food or not; and I would do this because the initiative sponsors failed to meet their burden to give a straightforward, accurate description of a "stand-alone bar" throughout the initiative.
In all other respects, I concur with the majority opinion.
NOTES
[1] Hearing on A.B. 118 Before the Assembly Judiciary Comm., 73d Leg., at 29 (Nev., March 17, 2005) (indicating that Nevada has the highest rate of childhood asthma in the country) (testimony of Buffy Martin, representing American Cancer Society, American Lung Association, American Heart Association, and Nevada Tobacco Prevention Coalition).
[2] See NRS 202.2492 (criminal penalties); NRS 202.24925 (civil penalty).
[3] NRS 463.350(1)(b).
[4] NRS 202.249(4)-(5).
[5] See Nev. Const. art. 19, § 2(3).
[6] See id.
[7] 155 Wash.2d 290, 119 P.3d 318, 321 (2005) (citing James D. Gordon III & David B. Magleby, Pre-Election Judicial Review of Initiatives and Referendums, 64 Notre Dame L.Rev. 298, 298 (1989)). We have cited the same law review article with approval in prior decisions. See Garvin v. Dist. Ct., 118 Nev. 749, 766 n. 75, 59 P.3d 1180, 1191 n. 75 (2002); Citizens for Train Trench Vote v. Reno, 118 Nev. 574, 585 n. 16, 53 P.3d 387, 394 n. 16 (2002), overruled in part by Garvin, 118 Nev. at 765 n. 72, 59 P.3d at 1191 n. 72; Glover v. Concerned Citizens for Fuji Park, 118 Nev. 488, 498 n. 37, 50 P.3d 546, 552 n. 37 (2002), overruled in part by Garvin, 118 Nev. at 765 n. 71, 59 P.3d at 1190 n. 71.
[8] See, e.g., Western Devcor, Inc. v. Massie, 168 Ariz. 426, 814 P.2d 767 (1991) (circulators' statements missing); Loontjer v. Robinson, 266 Neb. 902, 670 N.W.2d 301 (2003) (sponsor's affidavit and street address missing); In re Initiative Petition No. 360, 879 P.2d 810 (Okla.1994) (impartiality and accuracy of ballot title); Coppernoll, 119 P.3d at 322 (ballot title, description and summary). But see Beebe v. Koontz, 72 Nev. 247, 302 P.2d 486 (1956) (refusing to consider a procedural objection when the opponents delayed filing their challenge for a year and gave no reason for their tardiness and entertaining the matter at that time would disrupt the election process).
[9] See Alaska Action v. Municipality of Anchorage, 84 P.3d 989 (Alaska 2004) (whether initiative proposed an "appropriation," prohibited by state constitution); McAlpine v. University of Alaska, 762 P.2d 81 (Alaska 1988) (same); Senate of the State of Cal. v. Jones, 21 Cal.4th 1142, 90 Cal. Rptr.2d 810, 988 P.2d 1089 (1999) (whether initiative violated a single-subject rule); Amer. Fed. of Labor-Congress v. March Fong Eu, 36 Cal.3d 687, 206 Cal.Rptr. 89, 686 P.2d 609 (1984) (validity of initiative that urged state legislature to propose balanced budget amendment to Congress, and thus did not enact or amend any statute); City & Cty. of San Francisco v. Patterson, 202 Cal.App.3d 95, 248 Cal.Rptr. 290 (1988) (whether initiative exceeded self-governance power under a charter); Wiltshire v. Superior Ct. (City of San Marcos), 172 Cal.App.3d 296, 218 Cal.Rptr. 199 (1985) (whether grant of a special use permit in a specific situation was a legislative subject proper for initiative or an adjudicatory subject and thus improper); Hessey v. Burden, 615 A.2d 562 (D.C.1992) (whether initiative was impermissibly administrative or permissibly legislative); Petition No. 360, 879 P.2d 810 (whether initiative violated a single-subject rule); Maleng v. King County Corrections Guild, 150 Wash.2d 325, 76 P.3d 727 (2003) (whether proposed county charter amendment was legislative in nature).
[10] Coppernoll, 119 P.3d at 322.
[11] Garvin, 118 Nev. 749, 59 P.3d 1180; Train Trench, 118 Nev. 574, 53 P.3d 387; Glover, 118 Nev. 488, 50 P.3d 546.
[12] See Alaska Action, 84 P.3d 989; McAlpine, 762 P.2d 81; Senate of the State of Cal., 988 P.2d 1089; Wiltshire, 218 Cal.Rptr. 199; Hessey, 615 A.2d 562; Petition No. 360, 879 P.2d 810.
[13] Alaska Action, 84 P.3d at 992-93; Winkle v. City of Tucson, 190 Ariz. 413, 949 P.2d 502, 504 (1997) (noting separation of powers concerns with any other standard: "The separation of powers doctrine dictates our deference to legislative functions. `The legislative power of the people is as great as that of the legislature.' Voter initiatives, part and parcel of the legislative process, receive the same judicial deference as proposals before the state legislature  courts are powerless to determine their substantive validity unless and until they are adopted." (citations omitted)); Hessey, 615 A.2d at 572-74 (discussing other cases and refusing to adopt a bright-line rule but stating, "[w]e agree with the majority of courts which hold that such review is imprudent," however it conceivably could be warranted in the truly "extreme" case, for example, an initiative seeking to establish a state religion); Loontjer, 670 N.W.2d at 306-07 (citing Duggan v. Beermann, 249 Neb. 411, 544 N.W.2d 68 (1996)); Petition No. 360, 879 P.2d at 814-15 (considering proposal for term limits on U.S. legislators similar to that removed by this court in Stumpf v. Lau, 108 Nev. 826, 839 P.2d 120 (1992), and noting that "[t]he initiative process is precious to the people" and only "clear or manifest facial constitutional infirmities" warrant preelection review; the court declined to reach the asserted substantive constitutional objections, relying in part on the "cogent dissent" in Stumpf); Coppernoll, 119 P.3d at 321.
[14] Coppernoll, 119 P.3d at 325.
[15] Alaska Action, 84 P.3d at 992 (citation omitted).
[16] Id.
[17] 106 Nev. 910, 802 P.2d 1280 (1990).
[18] Id. at 916-17, 802 P.2d at 1281-82 (citations omitted).
[19] 61 Nev. at 420, 131 P.2d at 517-18.
[20] 108 Nev. 826, 839 P.2d 120 (1992).
[21] Id. at 830, 839 P.2d at 123.
[22] Id. at 831, 839 P.2d at 123.
[23] 118 Nev. at 766, 59 P.3d at 1191.
[24] Id. at 766, 59 P.3d at 1191.
[25] Id. (footnote omitted).
[26] Id.
[27] See cases cited supra n. 13.
[28] 119 Nev. 646, 651, 80 P.3d 1276, 1279-80 (2003) (footnotes omitted).
[29] See Resnick v. Nevada Gaming Commission, 104 Nev. 60, 65-66, 752 P.2d 229, 232-33 (1988); Doe v. Bryan, 102 Nev. 523, 525-26, 728 P.2d 443, 444 (1986).
[30] See also Secretary of State. v. Nevada State Legislature, 120 Nev. 456, 463, 93 P.3d 746, 750-51 (2004) (recognizing that there existed no actual controversy to resolve concerning the secretary's attempt to prevent the Legislature from permitting executive branch employees from serving in the Legislature until such an employee was actually seated as a member of either house, since voters could reject those candidates, any such employees could resign their executive branch employment before the session, or the Senate and Assembly could refuse to seat an executive employee because such employment disqualified the member from serving in a dual capacity); State, Dep't Mtr. Veh. v. Jones-West Ford, 114 Nev. 766, 776, 962 P.2d 624, 631 (1998) (concluding that petition for the DMV's review of a franchisor's decision to terminate a franchisee's license was not ripe until the franchisee had been denied relief under the franchisor's internal appeal process); Knittle v. Progressive Casualty Ins. Co., 112 Nev. 8, 908 P.2d 724 (1996) (determining that a personal injury plaintiff's action seeking a declaration concerning insurance coverage against the alleged tortfeasor's insurer is not ripe before plaintiff has obtained a judgment against the alleged tortfeasor); City of No. Las Vegas v. Cluff, 85 Nev. 200, 201, 452 P.2d 461, 462 (1969) (reversing a district court's declaratory judgment concerning the validity of a city ordinance that had not yet been enacted, holding that the matter was not ripe: "The question here is whether or not the validity of a proposed legislative act can be ruled upon in advance of its enactment. The answer is that it cannot.").
[31] Although the opponents assert that "most" bars would be included in the nonsmoking ban, the record is devoid of any evidence concerning how many bars are in the state of Nevada or what percentage serve food that requires a food-handling license.
[32] Stumpf, 108 Nev. at 832, 839 P.2d at 124.
[33] Armstrong v. Davidson, 10 P.3d 1278, 1282 (Colo.2000).
[34] Id. (quoting In re Ballot Title 1999-2000 # 246(e), 8 P.3d 1194, 1197 (Colo.2000)).
[35] See NRS 293.250(5) (requiring the Secretary of State, upon consultation with the Attorney General, to prepare condensations and explanations for statewide measures).
[36] See Nev. Const. art. 6, § 6; Lamb v. Doe, 92 Nev. 550, 551, 554 P.2d 732, 733 (1976) (directing the district court to dismiss an action seeking an abstract interpretation of a criminal statute and stating that "[i]t is not the court's business to render advisory opinions for unknown persons who may or may not have a justiciable controversy"); see also Cluff, 85 Nev. at 201, 452 P.2d at 462 (refusing to consider a challenge to an initiative when no actual controversy existed). Here, the proponents agreed that hotel rooms and motel rooms should not be included within the NCIAA's scope; accordingly, no actual controversy was presented.
[37] We note that one could interpret the opponents' argument as asserting fraud on the part of the signature gatherers. But fraud would raise factual issues, which this court is not suited to resolve. See Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981). Additionally, at the district court hearing, the opponents specifically stated that they did not require an evidentiary hearing, but only oral argument. Thus, the opponents waived any argument based on actual fraud by signature gatherers. See Edgington v. Edgington, 119 Nev. 577, 587 n. 28, 80 P.3d 1282, 1290 n. 28 (2003) (holding that, when appellant failed to raise or present evidence on an issue in the district court, the issue was waived on appeal).
[38] Rogers v. Heller, 117 Nev. 169, 173, 18 P.3d 1034, 1036 (2001) (providing that Nevada Constitution, Article 19, Section 6 is a "threshold content restriction").
[39] Id., accord Alaska Action, 84 P.3d at 993 (stating that an initiative constitutes an appropriation if it sets aside a specified amount of money for a certain purpose and is executable in such a way that it requires no further legislative action).
[40] See State ex rel. Card v. Kaufman, 517 S.W.2d 78, 80 (Mo.1974) (concluding that, although an initiative did not by its terms appropriate money, because the initiative left no discretion to the city council to pay the mandated compensation, the initiative constituted an appropriation).
[41] See id. at 80-81.
[42] Cf. NRS 202.2491.
[43] See NRS 202.2492, 202.24925 (providing criminal (misdemeanor) and civil ($100) penalties, respectively, for smoking in an area in which smoking is prohibited).
[44] See Rogers, 117 Nev. at 173, 18 P.3d at 1036.
[45] See Nev. Const. art. 19, § 3.
[46] See Nev. Const. art. 19, § 1(1).
[47] State ex rel. Cody v. Stahl, No. 83037, 2003 WL 22725706 (Ohio Ct.App. Nov. 20, 2003).
[48] City of Las Vegas v. Ackerman, 85 Nev. 493, 501, 457 P.2d 525, 530 (1969) ("When the initiative ordinance was enacted it superseded the existing ordinance."); Tesoriere v. District Court, 50 Nev. 302, 258 P. 291 (1927) (holding that a measure was an initiative, not a referendum, when it was not a legislative enactment that had been referred to the people, but rather amended existing statutes and repealed statutes that conflicted with the amendments).
[49] Whitmore v. Carr, 2 Cal.App.2d 590, 38 P.2d 802, 804 (1934).
[50] Calfarm Ins. Co. v. Deukmejian, 48 Cal.3d 805, 258 Cal.Rptr. 161, 771 P.2d 1247, 1257 (1989).
[51] In light of the nature and urgency of this matter, we suspend NRAP 41(a) and direct the clerk of this court to issue the remittitur forthwith. See Rogers, 117 Nev. at 178 n. 24, 18 P.3d at 1040 n. 24.
[1] See Armstrong v. Davidson, 10 P.3d 1278, 1282 (Colo.2000); In re Title, Ballot Title 1999-2000 # 25, 974 P.2d 458, 469 (Colo.1999); Nevada Judges Ass'n v. Lau, 112 Nev. 51, 59-60, 910 P.2d 898, 903-04 (1996); Stumpf v. Lau, 108 Nev. 826, 832, 839 P.2d 120, 124 (1992).
[2] Nevada Judges Ass'n, 112 Nev. at 59-60, 910 P.2d at 903-04; see In re Title, Ballot Title 1999-2000 # 25, 974 P.2d at 469.