# IN THE SUPREME COURT OF THE STATE OF NEVADA

COALITION FOR NEVADA'S FUTURE, A NEVADA POLITICAL ACTION COMMITTEE,
Appellant,
vs.
RIP COMMERCE TAX, INC., PAC, A NEVADA POLITICAL ACTION COMMITTEE; AND BARBARA CEGAVSKE, IN HER OFFICIAL CAPACITY AS NEVADA SECRETARY OF STATE,
Respondents.

No. 69501

FILED

MAY 11 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

## *ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING*

This is an appeal from a district court order denying a complaint for declaratory and injunctive relief that challenged a referendum petition seeking voter approval or disapproval of the commerce tax provisions of Senate Bill 483 from the 2015 Legislative Session. First Judicial District Court, Carson City; James E. Wilson, Judge.

In May 2015, the Nevada Legislature passed Senate Bill 483 as part of the state's overall budget. SB 483, among other things, raises revenue by imposing a "commerce tax" on businesses earning more than $4 million in a fiscal year. 2015 Nev. Stat., ch. 487, at 2876, and § 20, at 2884-85. According to the Economic Forum's May 1, 2015 Forecast, the commerce tax is expected to add, to the state general fund, net revenues of approximately $119.8 million in fiscal year 2015/16 and $59.9 million in

16-14885

fiscal year 2016/17.[1] The tax was signed into law by the governor in June 2015. 2015 Nev. Stat., ch. 487, at 2876.

A few months later, respondent RIP Commerce Tax, Inc. filed with the Secretary of State a petition seeking to refer the commerce tax portion of SB 483 to the voters for approval or disapproval. Shortly thereafter, appellant Coalition for Nevada's Future filed a district court complaint challenging the referendum petition. In particular, the Coalition asserted that the petition fails to strictly comply with referendum requirements under Nevada Constitution Article 19, Section 1 because it challenges a senate bill rather than a statute, contains confusing and inaccurate language in its explanation and enacting clause, and impermissibly addresses administrative matters, as opposed to legislative matters. The Coalition also complained that the commerce tax's disapproval would unbalance the state budget in violation of Article 9, Section 2(1)'s balanced budget mandate and that the petition's description of effect fails to inform signers of the budgetary impact that the tax's repeal would have. After a hearing, the district court entered an

---

[1]We take judicial notice of the Economic Forum's May 1, 2015 Forecast Report, Adjusted for Legislative Actions from the 2015 Session and Approved Tax Credits, available at http://www.leg.state.nv.us/Division/Fiscal/Economic%20Forum/. NRS 47.130(2)(b); NRS 47.150(1); *Mack v. Estate of Mack*, 125 Nev. 80, 91, 206 P.3d 98, 106 (2009). Beginning in fiscal year 2016/17, businesses can take a credit against their modified business tax liability of up to 50-percent of the commerce taxes they paid for the previous fiscal year. *See* 2015 Nev. Stat., ch. 487, § 67(4), at 2900, and § 70(4), at 2902. Accordingly, that year's net commerce tax-related revenue includes $119.8 million in projected revenue, less a $59.9 million modified business tax credit.

order denying all requested declaratory and injunctive relief, and the Coalition appealed.

*The petition is not invalid*

Having considered the parties' briefs and appendices and having heard oral argument, we conclude that the Coalition has not met its burden to demonstrate that the referendum petition is invalid. *Nevadans for Nev. v. Beers*, 122 Nev. 930, 942, 142 P.3d 339, 347 (2006) (explaining that, when no facts are disputed in ballot matters, this court reviews orders denying declaratory and injunctive relief de novo). First, although Article 19, Section 1 describes a "[r]eferendum for approval or disapproval of statute or resolution enacted by legislature," the petition is not infirm for referring a senate bill, as the senate bill became a statute when signed into law by the governor on June 9, 2015. *See* Nev. Const. art. 4, § 23 ("[N]o law shall be enacted except by bill."); Nevada Legislative Manual, Appendix F, Nevada Legislative Counsel Bureau (May 2015), at 273, http://www.leg.state.nv.us/Division/Research/Publications/LegManual /2015/index.html (defining "Statute" as a "[b]ill passed by both houses and approved by the Governor, or, if vetoed by the Governor, the veto overridden by a two-thirds vote of each house"); *Statute, Black's Law Dictionary* (10th ed. 2014) (defining "statute" as "[a] law passed by a legislative body; specif., legislation enacted by any lawmaking body, such as a legislature").

Nor is the petition invalid based on its explanation and format. When read as a whole, it is sufficiently clear that the petition is referring SB 483 to the voters for approval or rejection of the commerce tax, and the Nevada Constitution requires no particular form for a referendum petition, except that it include the full text of the proposed measure, as this petition does. *See generally Schumacher v. Byrne*, 237

N.W. 741, 745 (N.D. 1931) (concluding that a petition referring a tax bill to the voters for approval or disapproval was not actually an initiative petition or otherwise invalid for containing an enacting clause, when the state constitution failed to prescribe any particular form and the purpose was sufficiently clear from the petition).

Finally, SB 483 invokes the basic legislative power to impose taxes. By seeking approval or repeal of that statute, the referendum is likewise legislative and does not violate any prohibition against the direct legislation of administrative matters. Nev. Const. art. 10, §1 ("The Legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property . . . ."); *Nevadans for the Prot. of Prop. Rights, Inc. v. Heller*, 122 Nev. 894, 914, 141 P.3d 1235, 1248 (2006) (recognizing that the people's legislative power is coequal and coextensive to that of the Legislature and that, unlike a local government, "the Legislature . . . performs strictly legislative functions"); *Galloway v. Truesdell*, 83 Nev. 13, 20, 422 P.2d 237, 242 (1967) (explaining that the Legislature's power is "to frame and enact laws, and to amend or repeal them"). Therefore, we conclude that the referendum is valid.

*The petition's description of effect is inadequate*

Although the referendum is valid as written, its description of effect is not. Under NRS 295.009(1)(b), "[e]ach petition for initiative or referendum must: . . . [s]et forth, in not more than 200 words, a description of the effect of the initiative or referendum if the initiative or referendum is approved by the voters. The description must appear on each signature page of the petition."

A description of effect is intended to "facilitate the people's right to meaningfully engage in the initiative process" by "prevent[ing]

voter confusion and promot[ing] informed decisions." *Beers*, 122 Nev. at 939-40, 142 P.3d at 345 (internal quotations omitted). The importance of the description of effect cannot be minimized, as it is what the voters see when deciding whether to even sign a petition. *See Educ. Initiative PAC v. Comm. to Protect Nev. Jobs*, 129 Nev., Adv. Op. 5, 293 P.3d 874, 879 (2013); *Las Vegas Taxpayer Accountability Comm. v. City Council*, 125 Nev. 165, 177, 208 P.3d 429, 437 (2009). We have emphasized that petition signers "must be informed at the time of signing of the nature and effect of that which is proposed. Failure to so inform the signatories and voters is deceptive and misleading . . . ." *Stumpf v. Lau*, 108 Nev. 826, 833, 839 P.2d 120, 124 (1992) (quotation and emphasis omitted) (reviewing an initiative petition that failed to describe the nature and purpose of the proposed measure), *overruled in part on other grounds by Herbst Gaming, Inc. v. Heller*, 122 Nev. 877, 888, 141 P.3d 1224, 1231 (2006); *see also Nev. Judges Ass'n v. Lau*, 112 Nev. 51, 59, 910 P.2d 898, 903 (1996) (noting in the ballot context that, while it is impossible "to explain all the conceivable implications of every initiative placed on a ballot[,]" the failure to explain material ramifications of the ballot initiative is potentially misleading). Although "[t]he utility of the description of effect is confined to the preliminary phase of the initiative [or referendum] process, when the proponent seeks to garner enough initial support so that the initiative [or referendum] will be considered by the Legislature and the voters," *Educ. Init.*, 129 Nev., Adv. Op. 5, 293 P.3d at 880, as the Coalition points out, the description of effect may hold even more impact with respect to a referendum, since merely gathering sufficient signatures to place a referendum on the ballot guarantees a change to the law regardless of the election's outcome. Nev. Const. art. 19 § 1(3) (providing that, if the voters

approve the referendum, the statute "shall stand as the law of the state and shall not be amended, annulled, repealed, set aside, suspended or in any way made inoperative except by the direct vote of the people," and if the voters disapprove the statute or resolution, it is rendered void); *cf. Educ. Init.*, 129 Nev., Adv. Op. 5, 293 P.3d at 881 (noting that the voters have the Secretary of State's official explanation and the required arguments for and against its enactment to review in determining whether to vote in favor of or against an initiative).

We review descriptions of effect to determine whether the description identifies the petition's purpose and how that purpose is to be achieved in a manner that is "'straightforward, succinct, and nonargumentative,'" and not deceptive or misleading.[2] *Educ. Init.*, 129 Nev., Adv. Op. 5, 293 P.3d at 879 (quoting *Las Vegas Taxpayer Accountability Comm.*, 125 Nev. at 183, 208 P.3d at 441 (internal quotations omitted)). While the description "does not need to mention *every* possible effect," *id.* (emphasis added), it must "accurately identify the consequences of the referendum's passage." *Las Vegas Taxpayer Accountability Comm.*, 125 Nev. at 184, 208 P.3d at 441.

Here, the description of effect describes the commerce tax and explains the legal effect of approval and disapproval, as follows:

> This referendum asks the voters whether to
> approve or disapprove those portions of Senate

---

[2]While we may consider a preelection challenge to the description of effect under NRS 295.009(1)(b), we may not review a preelection challenge to a referendum's substantive constitutionality, including whether the referendum violates Article 9, Section 2(1) of the Nevada Constitution by unbalancing the state budget, because it is not ripe. *Herbst Gaming, Inc. v. Heller*, 122 Nev. 877, 883-88, 141 P.3d 1224, 1228-31 (2006).

Bill No. 483 from the 2015 Legislative Session which relate to the commerce tax. Pursuant to S.B. 483, the commerce tax is imposed on each business entity engaged in business in this State whose Nevada gross revenue in a fiscal year exceeds $4,000,000. The commerce tax is calculated by multiplying the amount of a business entity's annual Nevada gross revenue (as adjusted by certain authorized deductions) which exceeds $4,000,000 by the tax rate applicable to the industry in which the business entity is primarily engaged.

If this referendum is approved by a majority of voters, the provisions of S.B. 483 related to the commerce tax may not be amended, annulled, repealed, set aside, suspended or in any way made inoperative except by a vote of the people. If a majority of voters disapproves of this referendum, the provisions of S.B. 483 related to the commerce tax are void which will have the effect of eliminating the commerce tax. Disapproval of the provisions of S.B. 483 related to the commerce tax does not prohibit the Legislature from enacting future legislation that imposes a commerce tax.

But nowhere does this description reveal the significant practical ramifications of the measure's disapproval.

Under Article 9, Section 2(1), "[t]he legislature shall provide by law for an annual tax sufficient to defray the estimated expenses of the state for each fiscal year; and whenever the expenses of any year exceed the income, the legislature shall provide for levying a tax sufficient, with other sources of income, to pay the deficiency, as well as the estimated expenses of such ensuing year or two years." In compliance with this duty to balance the state budget, the Legislature enacted SB 483's commerce tax to provide a source of revenue for funding state expenditures. Eliminating the commerce tax thus will unsettle the balanced budget for

this biennium, fiscal years 2015/16 and 2016/17, causing financial uncertainty for the government, and thus the people, of this state. Indeed, based on the Economic Forum's estimates, the Legislative Counsel Bureau's Fiscal Analysis Division has indicated that the people's disapproval of the commerce tax in November 2016 would result in a net loss to the state general fund of approximately $74.9 million in fiscal year 2016/17 and approximately $59.9 million in the fiscal years thereafter.[3]

Yet, even though the tax's disapproval will necessarily unbalance the budget approved by the Legislature in 2015 pursuant to its Article 9, Section 2(1) duty, the description of effect makes no mention whatsoever of this critical consequence. Accordingly, we conclude that the referendum's description is deceptive for failing to accurately identify the practical ramification of the commerce tax's disapproval, and any signatures obtained on petitions with this misleading description are invalid. NRS 295.015(2). While we recognize that the description of effect is constrained to only 200 words, it is imperative that signers understand the effects and ramifications of their signature and later vote. Therefore, to facilitate the people's right of direct legislation, the district court on remand must clarify the description of effect by taking into account the material consequences of the referendum, including that the disapproval of the tax will unbalance the state budget prepared pursuant to Article 9, Section 2(1). *See* NRS 295.061(3) ("If a description of the effect of an

---

[3]We take judicial notice of the Fiscal Analysis Division's statement entitled Financial Impact of the Referendum on Provisions Related to the Commerce Tax From Senate Bill No. 483 of the 2015 Legislative Session Petition, available at: http://nvsos.gov/index.aspx?page=1541. NRS 47.130(2)(b); NRS 47.150(1); *Mack*, 125 Nev. at 91, 206 P.3d at 106.

initiative or referendum . . . is challenged successfully . . . and such description is amended in compliance with the order of the court, the amended description may not be challenged."). Accordingly, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.[4]

_____, C.J.
Parraguirre

_____, J.          _____, J.
Hardesty                              Douglas

_____, J.          _____, J.
Cherry                                Gibbons

_____, J.
Pickering

SAITTA, J., concurring:

The majority has concluded that the commerce tax referendum's description of effect is unacceptably flawed. I agree. The description of effect is intended to do just what it says—inform petition signers of the material effects of what is proposed. I write separately to point out that by ignoring the significant effect the referendum would have on the balanced budget mandate, the description of effect suggests that no such effect exists and is thus materially misleading. As a result,

---

[4]In light of the nature and urgency of this matter, we suspend NRAP 41(a) and direct the clerk of this court to issue the remittitur forthwith. *See Rogers v. Heller*, 117 Nev. 169, 178 n.24, 18 P.3d 1034, 1040 n.24 (2001).

the petition's signers have been both deceived and misled. *Educ. Initiative PAC v. Comm. to Protect Nev. Jobs*, 129 Nev., Adv. Op. 5, 293 P.3d 874, 879 (2013). Such drafting threatens the sanctity of the petition process and consequently is untenable, and thus, I concur with the majority's conclusion that the description is invalid.

_____, J.
Saitta

cc:    Hon. James E. Wilson, District Judge
       White Hart Law
       The Griffin Company
       Mueller Hinds & Associates
       Attorney General/Carson City
       Carson City Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A