# IN THE SUPREME COURT OF THE STATE OF NEVADA

NO SOLAR TAX PAC, A NEVADA
COMMITTEE FOR POLITICAL
ACTION,
Appellant,
vs.
CITIZENS FOR SOLAR AND ENERGY
FAIRNESS, A NEVADA COMMITTEE
FOR POLITICAL ACTION; AND
BARBARA CEGAVSKE, IN HER
OFFICIAL CAPACITY AS THE
NEVADA SECRETARY OF STATE,
Respondents.

No. 70146

**FILED**

AUG 04 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a district court order declaring a referendum relating to net metering invalid and enjoining its placement on the 2016 ballot. First Judicial District Court, Carson City; James Todd Russell, Judge.

For the last two decades, Nevada law has required utility companies to offer renewable energy system owners credits for excess energy produced, through a program of net metering. Because net metering apparently imposed an unfair financial burden on non-net metering customers, *see* Hearing on SB 374 Before the Assembly Commerce and Labor Comm., 78th Leg., at 47 (Nev., May 20, 2015), the net metering program was capped at 3% of the total peak capacity of all utilities in the state. *Id.*; *see* 2013 Nev. Stat., ch. 510, at 3341 (amending NRS 704.773). During the last legislative session, however, the legislature allowed for net metering beyond the cap, albeit at a tariff, and placed regulatory authority over the net metering program with the Public

Utilities Commission of Nevada (PUCN), charging that entity with maintaining fairness between customers of the net metering program and non-net metering customers and giving it certain tools to do so.[1] Hearing on SB 374, at 47-48 (Nev., May 20, 2015); *see* 2015 Nev. Stat., ch. 379, at 2146-55. The PUCN has since set new net metering tariff rates and charges.

Shortly after the new law was enacted, appellant No Solar Tax PAC sought to repeal portions of it through a Petition for Referendum on Certain Provisions Related to Net Metering Set Forth in 2015 Statutes of Nevada, Chapter 379. The petition strikes language within Chapter 379 concerning the cap, the tariff, and the PUCN's administrative authority to set net metering rates and charges. Respondent Citizens for Solar Energy and Fairness then filed a complaint for declaratory and injunctive relief in the district court challenging the petition. The district court agreed with Citizens that the petition did not qualify as a referendum, but rather constituted an initiative, and granted declaratory relief and an injunction, not reaching the description of effect issues also raised by Citizens. No Solar Tax has appealed, contesting the district court's interpretation of the initiative and referendum provisions of Article 19 of the Nevada Constitution. Citizens seeks to uphold the district court's order, either on

---

[1]For example, the new law gives discretion to the PUCN to act in the public interest, authorizing it to establish different rate classes for net metering customers (including time-of-use rates not authorized for non-net metering customers without their permission), to limit enrollment in net metering, and to determine whether the tariff should be applied to existing net metering customers. 2015 Nev. Stat., ch. 379, §§ 2.3 and 2.5, at 2148-49.

the basis of exceeding the referendum power under Article 19, or because the petition's description of effect is defective.

*Discussion*

In ballot matters not involving disputed facts, this court reviews de novo orders resolving complaints for declaratory and injunctive relief. *Nevadans for Nev. v. Beers*, 122 Nev. 930, 942, 142 P.3d 339, 347 (2006). As we will consider constitutional questions only when necessary, *Miller v. Burk*, 124 Nev. 579, 588–89, 188 P.3d 1112, 1118–19 (2008), we start and, in this case, end with the description of effect arguments.[2]

Under NRS 295.009(1)(b), petitions for referendum must "[s]et forth, in not more than 200 words, a description of the effect of the initiative or referendum if the initiative or referendum is approved by the voters." The description of effect is intended to aid the people's right to directly legislate by "prevent[ing] voter confusion and promot[ing] informed decisions." *Beers*, 122 Nev. at 939, 142 P.3d at 345 (internal quotations omitted). It is what the voters see when deciding whether to sign a petition, and we have emphasized that the description must accurately inform petition signers "of the nature and effect of that which is proposed." *Stumpf v. Lau*, 108 Nev. 826, 833, 839 P.2d 120, 124 (1992) (emphasis omitted), *overruled in part on other grounds by Herbst Gaming, Inc. v. Heller*, 122 Nev. 877, 888, 141 P.3d 1224, 1231 (2006). The failure to do so will render the description defective. *Id.*

This court reviews descriptions of effect to determine whether the description identifies the petition's purpose and how that purpose is to

---

[2]This court will affirm a district court order reaching the correct result, even if for different reasons. *Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 823-24 n.2, 221 P.3d 1276, 1280 n.2 (2009).

be achieved, in a manner that is "straightforward, succinct, and nonargumentative," and not deceptive or misleading. *Las Vegas Taxpayer Accountability Comm. v. City Council*, 125 Nev. 165, 183, 208 P.3d 429, 441 (2009) (internal quotations omitted). The description does not necessarily need to explain every effect, or hypothetical effects, but it does need to accurately set forth the main consequences of the referendum's passage. *Id.*

Citizens asserts that the petition's description of effect is misleading both in its explanation of the referendum's subject matter and in its account of the consequences of approval. The petition's description of effect states:

> This referendum asks voters to approve or disapprove portions of Chapter 379, Statutes of Nevada (2015), that relate to net metering customers (solar, wind, and hydro-electric customers, collectively "green energy customers"), such as homeowners with rooftop solar panels. Previously, the Public Utilities Commission was required to treat green energy customers the same as standard residential customers and ensure that they received a credit for the excess electricity they produced at the retail rate. Recently, the Commission imposed substantially increased fixed charges on green energy customers, reduced the value of the energy they generate, and made green energy less affordable and even cost prohibitive for some residential customers.
>
> Signing this petition is a statement that you support repealing the new green energy rates and charges and preserving net metering as the program has historically been implemented.
>
> If a majority of voters disapprove of the new rates and charges imposed on green energy, the bolded, bracketed, and underlined provisions of this referendum will be repealed. This means net

metering systems, which produce renewable energy, will continue to be available to energy customers at reasonable rates.

As Citizens points out, this description fails to accurately describe the referendum's purpose and the consequences of repealing the referred language. First, the description identifies the PUCN-imposed rates and charges as the referendum's topic, suggesting that the petition will repeal the new rates and charges and indicating that the vote is to approve or disapprove those rates and charges. But the rates and charges are the result of an administrative order—they are not set out in Chapter 379—and the repeal of the referred language would do more than eliminate the new rates and charges—it would remove the PUCN's power to set specific net metering rates altogether, a consequence that is not mentioned. Moreover, although the description states that the repeal of the specified language would preserve the net metering program "as the program has historically been implemented," that portrayal is not entirely accurate, because a cap was previously placed on the amount of net metering allowed, and this referendum concededly would not revive that cap, thus allowing an unlimited amount of net metering. Describing this effect is especially critical, as the form of the referendum, which asks the voters to approve or disapprove only a specified selection of words and sentences adopted by the 2015 legislature, does not show that a cap was in place before the 2015 legislative changes. Finally, the description is argumentative, using terms that are not in the statutory language, such as "green energy," and asserting that the PUCN-set rates and charges are "unaffordable and cost-prohibitive," while the rejection of the referred language would allow the program to continue at a rate that is "reasonable." As a result, the description is not only inaccurate and

Supreme Court
of
Nevada

(O) 1947A

misleading, but also argumentative.   Such a description is invalid, *Las Vegas Taxpayer*, 125 Nev. at 183, 208 P.3d at 441, and we therefore ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

cc:     Hon. James Todd Russell, District Judge
        White Hart Law
        Attorney General/Carson City
        Allison, MacKenzie, Ltd.
        Lemons, Grundy & Eisenberg
        Carson City Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A